UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMIE LEIGH JONES, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-cv-2719 |
| | § | |
| HALLIBURTON COMPANY, et. al, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Compel Arbitration and to Stay Proceedings.[1] After considering the parties' submissions, arguments presented at a hearing on the pending motion, and the relevant law, the Court finds that Defendants' motion, Doc. No. 45, should be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court will not compel to arbitration Plaintiff's claims for assault and battery; intentional infliction of emotional distress arising out of the alleged assault; negligent hiring, retention, and supervision of employees involved in the assault; and false imprisonment. The Court will, however, stay litigation of these claims until parties complete arbitration of Plaintiff's arbitrable claims. The Court will compel to arbitration Plaintiff's remaining claims. Defendants' request for an award of sanctions is **DENIED**.

## I.     BACKGROUND

In 2004, at the age of 19, Plaintiff Jamie Leigh Jones began work for Halliburton/Kellogg Brown and Root in Houston, Texas as an administrative assistant. Plaintiff alleges that while

---

[1] For purposes of this order, "Defendants" refer to the various Halliburton and KBR defendants named in the Complaint, and not the United States of America or any individual defendant.

employed by Defendants in Houston, she was sexually harassed by her direct supervisor, Eric Iler.

On July 21, 2005, Ms. Jones signed a contract with Defendant Overseas Administrative Services, a wholly-owned foreign subsidiary of Defendant KBR, agreeing to work as an IT Customer Support Analyst in Baghdad, Iraq.   Paragraph twenty-six of her Employment Agreement contained the following provision:

> You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference.   You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.

(Doc. 45, Ex. G.)  Ms Jones' initials appear at the end of that paragraph.

Ms. Jones began work at Camp Hope, located in the "Green Zone" of Baghdad, on July 25, 2005.[2]   As part of her employment contract, Ms. Jones was provided housing in predominantly male barracks.  Plaintiff alleges that she was subject to harassment by men in the barracks and that she complained about the sexually hostile living conditions two days after arriving.  According to Ms. Jones, no action was taken in response to her request to be housed in a safer location, and she was instead advised to "go to the spa."

On the evening of July 28, 2005, just four days after she arrived in Iraq, Ms. Jones alleges that she was drugged and brutally raped by several Halliburton/KBR firefighters, including Defendant Charles Boartz, in her room in the barracks, resulting in serious injuries including torn pectoral muscles and ruptured breast implants.  On the morning of July 29, 2008, Ms. Jones discovered Defendant Boartz lying in the bottom bunk of her bed, and he allegedly confessed to

---

[2] Plaintiff alleges that Camp Hope was under the direct control and authority of the United States Department of State, the United States Department of Defense, KBR, and Halliburton, collectively.

having unprotected sex with her.  Ms. Jones reported the rape to another employee, who took her

to see KBR medical personnel.  A rape kit was administered at a hospital run by the U.S. Army.

Plaintiff alleges that Defendants subsequently mishandled the rape kit.  Ms. Jones also alleges

that after reporting the rape, Defendants locked her in a trailer and denied her access to an

outside phone line until Ms. Jones was able to convince a guard to allow her to call home.

According to Plaintiff, she was also interrogated by management and human resource personnel

for hours and was told that if she chose to return to the United States, she would not have the

guarantee of a job upon return.

Ms. Jones subsequently filed a claim for sexual harassment with the Equal Employment

and Opportunity Commission (EEOC).  The EEOC conducted an investigation and credited Ms.

Jones' claim of sexual harassment, finding cause to believe that the Halliburton defendants

violated Title VII of the Civil Rights Act of 1964.  (Doc. No. 48, Ex. 5.)

On February 15, 2006, Ms. Jones, represented by different counsel, filed a request for

arbitration alleging many, though not all, of the same claims asserted in this lawsuit.  While that

arbitration was pending, on advice of new counsel, Ms. Jones filed the instant lawsuit in the

Eastern District of Texas.[3]  The case was transferred to the Southern District of Texas, Houston

Division, on July 24, 2007.  Ms. Jones now asserts claims of negligence; negligent undertaking;

sexual harassment and hostile work environment under Title VII, retaliation; false

imprisonment;[4] breach of contract; fraud in the inducement to enter the employment contract;

fraud in the inducement to enter the arbitration agreement; assault and battery and intentional

---

[3] In that lawsuit, Ms. Jones named the United States of America as an additional defendant.  Plaintiffs non-suited the
United States in September 2007.  Individual defendants Eric Iler and Charles Boartz, also named in Plaintiff's
complaint, have not made an appearance in this case.
[4] Plaintiff's Fourth Amended Complaint does not list false imprisonment as a separate claim, but does assert that
Defendant's actions "amounted to a false imprisonment." (Pl.'s Fourth Am. Compl. ¶ 49(a).)  At a hearing on the
pending motion, counsel for Plaintiff indicated that Plaintiff did, in fact, intend to assert a claim for false
imprisonment.

infliction of emotional distress.  Ms. Jones contends that the Halliburton and KBR defendants are vicariously liable for the torts committed directly by its employees.

## II.    ANALYSIS

Defendants have asked the Court to compel all of Ms. Jones' claims to arbitration in accordance with the arbitration agreement contained in her employment contract.  Defendants also ask the Court to sanction Plaintiff for unreasonably multiplying proceedings.

In deciding whether to compel arbitration of a dispute, the Court is required to use a two-step inquiry.  "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable."  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal citation omitted).  The Court does not consider the merits of the underlying action when conducting the two-step inquiry.  *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

### A.    Did the Parties Agree to Arbitrate the Dispute?

The first step of the inquiry, whether the parties agreed to arbitrate the dispute, requires the Court to determine "whether there is a valid agreement to arbitrate between the parties; and . . . whether the dispute in question falls within the scope of that arbitration agreement."  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).  The Court will consider each of these components in turn.

### 1. Is there a valid agreement to arbitrate between the parties?

Plaintiff argues that the arbitration agreement is invalid because there was no meeting of the minds, the arbitration clause was fraudulently induced, the provision is contrary to public policy, and because enforcement of the arbitration provision would be unconscionable.  Plaintiff

also maintains that the Court should not enforce the arbitration agreement based on the equitable doctrine of unclean hands. After considering these arguments, and for the reasons that follow, the Court finds that the arbitration agreement in this case is valid.

Ordinary principles of state contract law govern the question of whether a valid agreement to arbitrate exists between the parties. *See, e.g., Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) ("[S]tate law may be applied '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (emphasis in original)); *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement"); *Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). Thus, the Court looks to Texas law to determine the validity of the arbitration provision at issue in this case.

### a)      Meeting of the Minds

Plaintiff first argues that the arbitration agreement is invalid because there was no meeting of the minds between Plaintiff and Defendant at the time Plaintiff signed the agreement. "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio,1999, pet. denied); *see also* 1 WILLISTON ON CONTRACTS, § 4:1 (4th ed.) ("[A]s a general principle, the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract."). Here, Ms. Jones signed the Employment Agreement that included the arbitration provision and initialed the arbitration

provision itself. Because she signed the agreement and initialed the arbitration provision, Ms.

Jones is presumed to have read the provision. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87,

90 (Tex. 1996). Nor is there any argument that Ms. Jones was unaware that she was signing an

arbitration provision. *See, e.g., Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir.

2003). The arbitration provision is not invalid, therefore, on these grounds.

### b)   Fraud in the Inducement

Plaintiff also argues that Defendants fraudulently induced her to enter the arbitration

agreement included in the contract. Plaintiff's arguments regarding fraudulent inducement of the

arbitration provision are identical to those she alleges in her claim of fraudulent inducement into

the employment contract as a whole.[5]  (*See* Pl.'s Fourth Am. Compl., 26-34.)  When deciding

whether an arbitration provision is valid, the Court may only consider "issues relating to the

making and performance of the agreement to arbitrate," and not "claims of fraud in the

inducement of the contract generally." *See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472

(5th Cir. 2002) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04

(1967)). "Only if the arbitration clause is attacked on an independent basis can the court decide

the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Will-Drill Res.,

Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) (citing *Prima Paint Corp.*, 388 U.S.

at 403); *Primerica*, 304 F.3d at 472.  Because Plaintiff's claim does not attack the arbitration

clause on an independent basis, her fraud in the inducement claim is a question for the arbitrator,

and cannot justify a finding that the arbitration provision was invalid.

---

[5] In briefing, Plaintiff additionally argues that Defendants knew that other provisions of the Dispute Resolution Program such as the "open door policy" would not be available to her in Iraq and contend that this fact is unique to the claim of fraud in the inducement of the arbitration agreement. There is no indication, however, that the requirement to arbitrate was in any way conditioned on the availability of any other DRP options. (*See* Doc. No. 45, Ex. H.) Plaintiff also argues that Defendant "breached the arbitration provision" by failing to enforce the other DRP or sexual harassment provisions of the contract. This argument appears to be a challenge to the contract as a whole, not to the arbitration agreement specifically.

### c)     Unconscionability

Plaintiff claims that enforcement of the arbitration provision is unconscionable.  Plaintiff

argues that enforcement of the provision would be unfair because Defendants knew of multiple

complaints of sexual harassment and abuse, yet concealed that information from her and falsely

represented that such behavior would not be tolerated.  Plaintiff further alleges that enforcement

of this arbitration provision is an inadequate deterrent, as evidenced by numerous allegations of

sexual harassment and related misconduct against Defendants by other women.  Finally, Plaintiff

outlines the many ways that this and other mandatory arbitration provisions in employment

contracts are generally unfair to employees.

"Under  Texas  law,  unconscionability  includes  two  aspects:  (1)  procedural

unconscionability, which refers to the circumstances surrounding the adoption of the arbitration

provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration

provision itself." *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir.

2004) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)).   Under Texas law,

arbitration agreements are not inherently unconscionable, even if they might be considered

contracts of adhesion.  *See Carter*, 362 F.3d at 301 ("In Texas, there is nothing per se

unconscionable about arbitration agreements; indeed, parties claiming unconscionability bear the

burden of demonstrating it."); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex.

2006); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005).  The Texas Supreme

Court has also held that it is not unconscionable, without more, to require an at-will employee to

accept a "take-it-or leave it" arbitration provision as a condition of employment. *See In re*

*Halliburton*, 80 S.W. at 572 ("Because an employer has a general right under Texas law to

7

discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms.").

Plaintiff argues that enforcement of the arbitration provision at issue in this case is procedurally unconscionable because of the gross disparity of bargaining power between Defendants and herself. Although "mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context," "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985). Plaintiff argues that the agreement to arbitrate was not only the result of an imbalance of economic power, but also the result of a gross imbalance of information. Namely, Defendants allegedly knew of a pervasive problem with sexual harassment and even allegations of sexual assault taking place overseas, and yet assured Plaintiff that such behavior would not be tolerated when asking her to agree to the employment contract and the arbitration provision. Plaintiff maintains that had she known of these matters, she would not have agreed to the arbitration provision. Plaintiff's claim, again, appears to be one of fraud in the inducement to the employment contract as a whole, and as the Court explained above, such claims are for the arbitrator. Plaintiff has provided no other evidence that the arbitration agreement is procedurally unconscionable.

Plaintiff also claims that the arbitration agreement is substantively unconscionable because it is unfair and oppressive. "[T]he basic test for [substantive] unconscionability is whether . . . the clause involved is so one-sided that it is unconscionable under the circumstances

existing when the parties made the contract.  The principle is one of preventing oppression and

unfair surprise and not of disturbing allocation of risks because of superior bargaining power."

*In re FirstMerit Bank*, N.A., 52 S.W.3d 749,  757 (Tex. 2001); *see also In re Palm Harbor

Homes*, 195 S.W. 3d at 678.

　　　The Texas Supreme Court found that the exact arbitration provision at issue in this case

was *not* substantively unconscionable because it has terms that "protect an employee" in the

arbitration process.  80 S.W. 3d at 572.  The Court elaborated:

> For example, the company agreed to pay all the expenses of an arbitration
> except a $50 filing fee. Both parties are to participate in the selection of the
> neutral arbitrator. The Program provides up to $2,500 for an employee to
> consult with an attorney. The rules provide for pre-arbitration discovery under
> the Federal Rules of Civil Procedure. All remedies the employee could have
> pursued in the court system are available in the arbitration. And the arbitrator
> may award reasonable attorney's fees to an employee who receives a favorable
> award regardless of whether such an award would be available in court.

*Id.* (adding that "[s]everal courts have found arbitration provisions with similar terms to be

enforceable.").

　　　Plaintiff notes that the *In re Halliburton* court was considering a standard claim of age

discrimination, and argues that the arbitration provisions are unfair in *this* case because her claim

involves rape.  The Court takes seriously Plaintiff's arguments regarding the fairness of requiring

her to arbitrate claims arising out of such grave allegations.   Many of Plaintiff's complaints,

however, are not about the features of this particular arbitration provision, but about the fairness

of arbitration generally.   Although the Court shares many of Plaintiff's concerns, these

arguments generally have been foreclosed by either the United States or the Texas Supreme

Court.   The Supreme Court has noted, for example, that "there are real benefits to the

enforcement of arbitration provisions" and rejected "the supposition that the advantages of the

arbitration process somehow disappear when transferred to the employment context."[6]  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-23 (2001) (holding that employment contracts are not generally exempted from the Federal Arbitration Act).  In *Gilmer v. Interstate/Johnson Lane Corp.*, the Court emphasized that by agreeing to arbitration, a party does not "forgo . . . substantive rights . . .; it only submits to their resolution in an arbitral, rather than a judicial, forum."  500 U.S. 20, 26 (1991) (citing *Mitsubishi*, 473 U.S. at 628).  The *Gilmer* Court additionally rejected arguments that judicial review of arbitration decisions is too limited or that an arbitrator's failure to provide a written opinion results in a lack of public knowledge about discriminatory practices or the "stifling of the development of the law."  500 U.S. at 36-37.  The Court has also "decline[ed] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators."[7]  *Gilmer*, 500 U.S. at 30 (citing *Mitsubishi*, 473 U.S. at 634).

Both the United States Supreme Court and the Texas Supreme Court have made clear that a court may not presume an arbitration clause is unconscionable based on policy arguments about the general unfairness of mandatory employment arbitration provisions.  Again, even though the Court shares some of Plaintiff's concerns about arbitration in the employment context, it is bound by this precedent.  Congress is certainly entitled to decide that mandatory arbitration provisions in employment contracts are not fair or that certain kinds of claims should fall outside the reach of the Federal Arbitration Act.  Plaintiff cites extensively to recent Congressional Hearings on H.R. 3010, the "Arbitration Fairness Act of 2007," in which the

---

[6] The Supreme Court had previously expressed a more critical view of arbitration of employment discrimination claims, noting, for example:  "[I]t is the informality of arbitral procedure that enables it to function as an efficient, inexpensive, and expeditious means for dispute resolution. This same characteristic, however, makes arbitration a less appropriate forum for final resolution of Title VII issues than the federal courts."  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57-58 (1974) (discussing arbitration provided for in a collective bargaining agreement).

[7] In making this statement, the *Gilmer* Court was addressing NYSE arbitration rules, but the Court added that the Federal Arbitration Act "also protects against bias, by providing that courts may overturn arbitration decisions '[w]here there was evident partiality or corruption in the arbitrators.'"  500 U.S. at 30 (citing 9 U.S.C. § 10(b)).

House Judiciary Subcommittee on Commercial and Administrative Law heard testimony on exactly these points. In the meantime, the Court is bound by existing precedent and cannot find this provision unconscionable.

### d)      Texas Public Policy

Plaintiff also claims that the Court should void the arbitration agreement on public policy grounds. Plaintiff points to one Texas appeals court decision that notes that there is "no authority for the proposition that a party may prospectively contractually exculpate itself with respect to intentional torts" and that such exculpation "would be contrary to public policy." *Solis v. Evins*, 951 S.W.2d 44, 50 (Tex. App.—Corpus Christi 1997) (adding that "[i]t is difficult to fathom that one would knowingly compromise her right to sue for intentional tort claims."). The problem with the argument in *Solis*, however, is that it presumes arbitration of a claim to be tantamount to allowing a party to "exculpate" itself with regard to those claims. Although this interpretation may be understandable, the Supreme Court's statement that a party does not forgo substantive rights in arbitration, but instead simply submits to their resolution in a non-judicial forum indicates that arbitration should not be viewed as a waiver of a party's right to sue.

### e)      Unclean Hands

Plaintiff finally asserts that a party must have "clean hands" to compel specific performance of an arbitration agreement. Plaintiff alleges that Defendants should not be allowed to compel arbitration because of their awareness of complaints of sexual assault, their concealment of that knowledge from Plaintiff, their intimidation and imprisonment of victims, their mishandling of evidence in this case, and their efforts to prevent claimants from receiving medical care after such assaults. Although there may be cases in which the equitable defense of unclean hands would prevent enforcement of an arbitration agreement, this is not one of them.

Plaintiff's allegations regarding Defendants' unclean hands do not address Defendants' enforcement of the arbitration agreement itself, and instead go to the merits of Plaintiff's fraudulent inducement claim. The Court has already found that Plaintiff's fraudulent inducement claim goes to the agreement in its entirety, and not to the arbitration provision specifically. *See In re Kaplan Higher Educ. Corp.*, 235 S.W. 3d 206, 210 (Tex. 2007) (refusing to apply unclean hands defense where misconduct pertained to the contract as a whole). Defendants' alleged unclean hands do not, therefore, render the arbitration agreement unenforceable.

### 2.    Does the dispute fall within the scope of the arbitration agreement?

Having found the arbitration provision to be valid, the Court must now decide whether Plaintiff's claims fall within the scope of the provision.

### a.    Relevance of Texas Public Policy and the Texas Arbitration Act

Plaintiff argues, first, that the language of the contract requires the Court to interpret the scope of the arbitration provision under Texas law.[8] Plaintiff further contends that Texas public policy as set forth in the Texas Arbitration Act dictates that her personal injury claims fall outside the scope of the arbitration provision. Defendants respond that the contract language makes clear that Federal Arbitration Act should govern the question of scope. Defendants further contend that it would be inappropriate to exclude personal injury claims from the scope of the provision even if Texas law were to apply to the question of scope.

---

[8] Paragraph 25 of Plaintiff's employment contract states:

> This Agreement is formed in the State of Texas and shall be governed by and construed in accordance with the laws of the State of Texas; except that with respect to all matters or disputes related to the validity or enforceability of provision 26 below, all issues shall be governed by and construed in accordance with the Federal Arbitration Act.

(Employment Agreement ¶ 25.) Plaintiff contends that the question of scope is not "related to the validity or enforceability" of the arbitration provision.

The Fifth Circuit has held that parties may designate state law to govern the scope of an arbitration clause in an agreement otherwise covered by the Federal Arbitration Act. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 246-50 (5th Cir. 1998). The Circuit subsequently clarified that "[w]here . . . an agreement contains a clause designating Texas law but does not exclude the FAA, the FAA and Texas law, including that state's arbitration law, apply concurrently because Texas law incorporates the FAA as part of the substantive law of that state." [9] *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 338 n. 7 (5th Cir. 2004) (citing *Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel*, 343 F.3d 355, 361 (5th Cir. 2003); *L & L Kempwood Associates v. Omega Builders, Inc.*, 9 S.W.3d 125, 127-28 & n. 15 (Tex. 1999)).

Even if the Court were to construe the contract as requiring the application of Texas law to the question of the scope of the arbitration provision, it could not find that Plaintiff's personal injury claims fall outside of the scope of the provision based on Texas public policy. The Texas Arbitration Act (TAA) "does not apply" to "a claim for personal injury" unless "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." TEX. CIV. PRAC. & REM. CODE ANN. § 171.002. Where an arbitration agreement does not meet these requirements, the arbitration agreement is "unenforceable under the TAA." *In re Godt*, 28 S.W. 3d 732, 739-39 (Tex. App.—Corpus Christi 2000). To the extent that §171.002 of the TAA affects the *enforceability* of the

---

[9] The Fifth Circuit has also, on occasion, suggested that the question of the scope of an arbitration provision is necessarily governed by state law. For example, in *Banc One*, the Circuit stated that the questions of "whether there is a valid agreement to arbitrate . . . and . . . whether the dispute in question falls within the scope of that arbitration agreement" are both "decided according to state law." *See Banc One*, 367 F.3d at 429 (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). In those cases in which the Fifth Circuit has applied state law to the question of scope, however, it has also observed nevertheless that "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *See, e.g., Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996) (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

agreement, it would be preempted by the FAA. *See, e.g., Freudensprung*, 379 F.3d at 338 n. 7; *Barker v. Halliburton Co.*, No. H-07-2677, 2008 WL 1883880, at *3 (S.D. Tex. Apr. 25, 2008).

Plaintiff contends, however, that the Court should look to §171.002 not to determine whether the agreement is enforceable, but instead as evidence that Texas public policy requires a finding that personal injury claims fall outside the scope of the arbitration agreement. According to Plaintiff, the TAA provides evidence of a strong public policy against requiring individuals to arbitrate personal injury claims without the advice of counsel. Rather than asking the Court to declare the arbitration agreement invalid or unenforceable, Plaintiff instead asks the Court to find that the arbitration provision only applies to personal injury claims if the agreement was signed by counsel.

The Court does not believe that such a distinction is sustainable. Plaintiff is, in essence, asking the Court to find that the arbitration provision is not enforceable as to personal injury claims. Furthermore, if courts were to look to state arbitration laws as evidence of public policy that limits the *scope* of a provision, parties could frequently make an end run around the Supreme Court's clear holding that "Courts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996).

The Court does not, therefore, find that Plaintiff's personal injury claims fall outside the scope of the arbitration provision based on the public policy expressed in the Texas Arbitration Act.

   **b.      Scope of the arbitration provision**

Although the public policy expressed in the Texas Arbitration Act does not govern the question of scope, the Court finds nevertheless that some of Plaintiffs claims fall outside the scope of the provision.

"In view of the policy favoring arbitration, we ordinarily 'resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration.'" *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (citing *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). "[A] valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* Although arbitration clauses are generally construed in favor of arbitration, the purpose of the Federal Arbitration Act simply was to place arbitration agreements "'upon the same footing as other contracts.'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

The arbitration provision in this case provides that "any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claims arising in the workplace" must be submitted to binding arbitration. (Employment Agreement ¶ 26.) Because the arbitration provision uses the words "related to," it is considered a broad provision. *See Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract."). Such provisions are "capable of expansive reach." *Id.* Although the Circuit in *Pennzoil* stated that a broad provision such as this one only requires that the dispute "touch" matters related to employment, it also noted that such a provision would embrace "all disputes between the parties having a *significant*

*relationship*" to Plaintiff's employment "regardless of the label attached to the dispute." *Id.*
1067, 1068 (emphasis added). In *Pennzoil*, the Circuit also declared that "even broad clauses
have their limits," and observed that *Pennzoil* was not a case that required the Court to "explor[e]
these outer limits." *Id.* at 1067 n. 8.

Several of Ms. Jones' claims fall beyond the outer limits of even a broad arbitration
provision. Specifically, the following claims are not related to Ms. Jones' employment:
vicariously liability for assault and battery (including rape); intentional infliction of emotional
distress arising out of that assault; negligent hiring, retention, and supervision of the employees
involved in the assault; and false imprisonment.[10] Ms. Jones alleges that she was drugged and
brutally raped by Charles Bortz, a Halliburton/KBR employee, and other Halliburton/KBR
employees in her bedroom. She also claims that she was falsely imprisoned by Defendants after
reporting the rape. Ms. Jones could maintain these claims without reference to her own
employment. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 252 (5th Cir.
1998). The fact that the rape was allegedly perpetrated by Halliburton/KBR employees does not
mean that the assault necessarily had anything at all to do with *Ms. Jones'* employment.
Similarly, Defendants' alleged false imprisonment of Plaintiff, even if carried out for some
business purpose of Defendants, does not implicate Ms. Jones' employment. Nor does the fact
that Ms. Jones is suing her former employer mean that this claim is related to her employment.
The arbitration clause did not require Ms. Jones to arbitrate any and all claims against her

---

[10] The Court stresses that for the purposes of this Order, it does not take any position as to the merits of Plaintiff's
asserted claims. Ms. Jones concedes that her Title VII, breach of employment contract, and fraud in the inducement
of the employment contract and arbitration clause claims are, in fact, related to her employment. The Court also
believes that Ms. Jones's premises liability claim must be arbitrated. The basis for Ms. Jones's premises liability
claim is that Defendants owed her a duty as an invitee. Under Texas law, an invitee is defined as "one who enters
on another's land with the owner's knowledge and for the mutual benefit of both," *Rosas v. Buddie's Food Store*,
518 S.W.2d 534, 536 (Tex. 1975). Because Plaintiff's housing was provided as part of her employment contract,
and given that she did not pay rent, the "mutual benefit" required to establish Plaintiff's status an invitee at least
touches on her employment. This does not mean, however, that Plaintiff's housing must be considered her
"workplace," nor that everything that happened at the barracks was related to her employment.

employer, without more. Instead, she is required to arbitrate any and all claims *related to her employment*. Even a broad provision such as this one has limits, and the Court can say with positive assurance that the alleged sexual assault in this case, and the abovementioned claims arising out of that assault, do not even touch on Ms. Jones' employment.[11]

There is no clear consensus among courts as to whether the kind of claims at issue in this case fall within the scope of a provision requiring arbitration of claims that relate to employment. Both parties have provided the Court with several cases involving the arbitrability of assault and sexual assault claims.[12]   The Mississippi Supreme Court has held, for example, that an employee's claim that she was raped by a supervisor could not be considered within the scope of a provision requiring the employee to arbitrate all claims related to her employment. *Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116, 1120-21 (Miss. 2007), *cert denied*, 2008 WL 695643, (Mar. 17, 2008) (interpreting the arbitration agreement under the Federal Arbitration Act and declaring: "While recognizing the breadth of the language in the arbitration provision, we unquestionably find that a claim of sexual assault neither pertains to nor has a connection with [Plaintiff's] employment."). Other courts have found that allegations of assault can be

---

[11] Although Defendants currently contend that all of Plaintiff's claims are employment-related, Defendants also assert as an affirmative defense that any act of sexual assault by an employee is "outside the scope of his duties for Defendants." (Defs.' Answer, Doc. 61, ¶ 97.) The Court recognizes that to prevail on a vicarious liability claim, Ms. Jones will have to show that the alleged rapists were acting in the scope of their employment. The Court notes, however, that even if Mr. Boartz and the other alleged rapists were acting in the scope of *their* employment at the time of the assault, this does not necessarily mean that the assault was related to or somehow touched on *Ms. Jones'* employment. Defendants cite to a California state case that considered relevant to the scope of an arbitration provision plaintiff's allegation that the defendant's employee acted in the scope of his employment when committing an alleged sexual assault. *Morales v. Club One*, No. A117918, 2007 WL 4533534, at *6 (Cal. App. Dec. 27, 2007). In *Morales*, however, the provision at issue required arbitration of all claims related to the plaintiff's membership in the health club, not to the plaintiff's employment.

[12] Many of these cases do not address the scope of the relevant arbitration provision or discuss significantly different arbitration provisions, and are therefore unhelpful. *See, e.g.*, *Magnolia Healthcare v. Barnes ex rel. Grigsby*, No. 2006-CA-00427-SCT 2008 WL 95813 (Miss. Jan 10, 2008); *Alterra Healthcare Corp. v. Estate of Linton ex rel Graham*, 953 S. 2d 574 (Fla. App. 2007); *In re RRGT, Inc.*, No. 04-06-0012-CV, 2006 WL 622736 (Tex. App.—San Antonio Mar. 15, 2006); *Doe v. Royal Caribbean Cruises, Ltd.*, 365 F.Supp.2d 1259 (S.D. Fla. 2005); *Joseph v. Howard*, No. A099589, 2003 WL 22810480 (Cal. App. Nov. 26, 2003).

considered related to a person's employment. *See, e.g., Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1063 (S.D. Ind. 2000) (failing to discuss underlying factual allegations in detail).

At least two district courts have held that this exact arbitration provision is broad enough to encompass claims similar to those asserted in this lawsuit.

In *Cravetz v. Halliburton*, No. 7-20285-CIV-ZLOCH (S.D. Fla. July 24, 2007), the Southern District of Florida compelled arbitration of plaintiff's tort claims based on a sexual assault allegedly committed by a man employed by the same defendants in this case. In finding that the dispute was within the scope of the arbitration provision, the Court observed that the alleged assault took place "while [plaintiff] was being housed in an apartment provided to her as an employee of a subsidiary and/or affiliate of Defendants" and "that her assailant was acting in violation of Defendants' employment policies." *Id.* at 7. The Court also noted that the Dispute Resolution Plan itself included torts in the list of arbitrable claims. *Id.* at 8.

In *Barker v. Halliburton*, No. H-7-cv-2677, ---F. Supp. 2d. ---, 2008 WL276390 (S.D. Tex. Jan. 30, 2008), the Southern District of Texas reached a similar conclusion. Plaintiff alleged claims of negligence, negligent undertaking, sexual harassment and hostile work environment, retaliation, fraud and intentional infliction of emotional distress arising out of, *inter alia*, an alleged sexual assault by a State Department employee that took place in plaintiff's living quarters in Iraq.[13] The *Barker* court found that all of plaintiff's extra-contractual claims fell within the scope of her employment because, among other things, they were "predicated on the failure of the Halliburton defendants' employees to follow company policies regarding . . . sexual harassment," and involved allegations that the defendants "negligently undertook to provide proper training, adequate and sufficient safety precautions (including adequate safety measures), adequate and sufficient policies and procedures in the recruitment, training and

---

[13] The Court notes that the present lawsuit involves claims of assault that were not at issue in *Barker*.

placement of personnel in Iraq." *Id.* at 11.  Finally, citing Fifth Circuit precedent analyzing the worker's compensation provision of the Defense Bases Act, the *Barker* court concluded that the overseas nature of the employment rendered incidents occurring outside the workplace or during an employees' leisure time as "fall[ing] under the employment contract." *Id.* at 12.

The Court must respectfully disagree with these decisions.  Just because an assailant's actions happen to be in violation of his employer's policies, and those policies also govern plaintiff's behavior, does not necessarily render the assault related to plaintiff's employment for purposes of arbitration.  Although the arbitration provision extends to personal injury claims arising in the workplace, the Court does not believe that Plaintiff's bedroom should be considered the workplace, even though her housing was provided by her employer.  The barracks were located some distance from the actual office where Ms. Jones worked as an IT Customer Support Analyst, and there is no indication that Ms. Jones or anyone else performed any job duties whatsoever at the barracks.

The overseas nature of Plaintiff's employment and the Fifth Circuit's analysis of the provisions of the Defense Bases Act do require further discussion, however.  In *O'Keefe v. Pan Am. Airways, Inc.*, the Fifth Circuit upheld a compensation award under the Longshoremens' and Harbor Workers' Compensation Act, incorporated into the Defense Bases Act, to the widow of a man killed in a traffic accident on the island of Grand Turk.  338 F.2d 319 (5th Cir. 1964).  Although the plaintiff was coming from a social visit at the time of the accident, the Circuit found that the accident occurred within the scope of his employment.[14]  *Id.* at 321.  Noting that "[e]mployees working under the Defense Bases Act, far away from their families and friends, in remote places where there are severely limited recreational and social activities, are in different circumstances from employees working at home," the Circuit concluded that "[p]ersonal

---

[14] The Circuit noted that the plaintiff, while off duty, was always on call.  *O'Keefe*, 338 F.2d at 321.

activities of a social or recreational nature must be considered as incident to the overseas employment relationship." *Id.* at 322. In reaching this conclusion, the Circuit stressed that the Longshoremen's Act "must be 'liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.'" *Id.* (citing *Voris v. Eikel*, 1953, 346 U.S. 328, 333 (1953)); *see also Balt. & Phila. Steamboat Co. v. Norton*, 284 U.S. 408, 414 (1932) (noting that the Longshoremen's Act is "deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which [it was] enacted and, if possible, so as to avoid incongruous or harsh results"); *Self v. Hanson*, 305 F.2d 699, 703 (9th Cir. 1962) (noting that the Longshoremen's Act should be considered "in favor of the workman" and "consistent with the liberal purpose of the act.").

Although the instant lawsuit also involves a remote, overseas workplace, the Court does not believe that the liberal interpretation of the term "scope of employment" in the workers' compensation context can be incorporated wholesale into the interpretation of an arbitration provision.[15] There is no reason to believe that the purposes and goals of workers' compensation should be imputed to the arbitration context. The Supreme Court itself has noted that "[w]orkmen's compensation is not confined by common-law conceptions of scope of employment."[16] *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 506 (1951). The Court is not, therefore, persuaded that the rape at issue in this case should be considered related to

---

[15] Even if the workers' compensation cases could be considered sufficiently analogous to this case, the Court notes that many of the cases awarding benefits for an injury that occurred in an overseas employee's leisure time or away from the workplace considered relevant the fact that the employee, though off-duty, was on-call 24 hours a day. *See, e.g., O'Keefe*, 338 F.2d at 321; *Anderson v. Employers Liab. Assur. Corp.*, 498 P.2d 288, 290 (Alaska 1972); *Self*, 305 F.2d at 701; *Pan Am. World Airways, Inc. v. O'Hearne*, 335 F.2d 70, 71 (4th Cir. 1964). There is no indication that Ms. Jones was on 24-hour call.

[16] Indeed, the dissent in *O'Leary* complained bitterly that the decision essentially declared an employer liable for the injuries of its overseas employee simply by virtue of the employer-employee relationship. 340 U.S. at 509-510 (Minton, J., dissenting).

Plaintiff's employment simply because it might be considered within Plaintiff's "scope of employment" for worker's compensation purposes.[17]

Plaintiff's claims of assault and battery; intentional infliction of emotional distress arising out of the assault; negligent hiring, supervision, and retention; and false imprisonment are not, therefore, within the scope of the arbitration provision, and the Court will not compel arbitration of these claims. Plaintiff's other claims against the Halliburton and KBR Defendants are within the scope of arbitration and the Court will, therefore, compel arbitration of those claims.[18]

## B.    The Court Will Stay Plaintiffs Claims Pending Arbitration

The Federal Arbitration Act requires a court to stay proceedings on any claim that is referable to arbitration. 9 U.S.C. § 3. The Fifth Circuit has held that a court must stay litigation of claims asserted against non-signatories to an arbitration agreement where "proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004); *see also Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000) (finding that a court must stay litigation of claims against a non-signatory where litigating such claims wound render the arbitration proceedings "both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration").

---

[17] Defendants point out that Ms. Jones is, in fact, receiving workers' compensation under the Defense Bases Act and that her attorney represented to the Department of Labor that her injuries were "sustained while in the course and scope of employment." Given that this term appears to be construed liberally in favor of an employee in the worker's compensation context, the Court does not agree that Ms. Jones should be estopped from asserting in this lawsuit that her claims are not related to her employment and that her injuries did not occur in the workplace for purposes of arbitration.

[18] The Court is not aware of any federal policy or statute that would render these claims non-arbitrable. *See Mitsubishi*, 473 U.S. at 627 (noting that even where parties have agreed to arbitrate, an arbitration agreement may be held unenforceable if Congress has expressed an intention that a category of claim should be exempted from arbitration); *Will-Drill Res., Inc.*, 352 F.3d at 314 ("Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable.").

Where some, but not all, claims must be referred to arbitration, a court may allow litigation of the non-arbitrable claims to proceed in federal court under certain circumstances. *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 (1983) (noting that federal law "requires piecemeal resolution [of disputes] when necessary to give effect to an arbitration agreement"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal" litigation"");[19] *Girard v. Drexel*, 805 F.2d 607, 610-11 (5th Cir. 1986) (upholding a district court's refusal to stay non-arbitrable claims); *Sam Reisfeld & Son Import Co. v. S. A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (noting that "[t]he district court correctly concluded that the antitrust claims should proceed to trial since such claims are generally not arbitrable. At the same time, the court found no obstacle to simultaneously referring the remaining claims to arbitration as such 'would not require the arbitrators to resolve any important legal or factual issues relating to the antitrust claims.'" (internal citation omitted)); *see also Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) (noting that "courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation"); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) ("[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket."). The Fifth Circuit has also noted that "[w]here a discretionary stay is proposed, something close to

---

[19] In a concurring opinion in *Dean Witter*, Justice White emphasized that substantial doubt existed as to whether the claims at issue were not arbitrable. 470 U.S. at 225 (White, J., concurring). He strongly agreed, however, with the majority's view that a district court should not stay arbitration or refuse to compel it at all "for fear of its preclusive effect," adding that where two proceedings are to go forward independently, "the concern for speedy resolution suggests that neither should be delayed" and "the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course." *Id.*; *see also Chang v. Lin*, 824 F.2d 219, 223 (2d Cir. 1987) (agreeing with Justice White's concurrence and finding that the district court erred in staying litigation of non-arbitrable claims because defendants had not rebutted the "heavy presumption" in favor of allowing litigation to proceed).

genuine necessity should be the mother of its invocation." *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985) (noting additionally that "[p]iecemeal adjudication is not always undesirable adjudication").

The Fifth Circuit has not directly addressed the factors that a Court should consider when deciding whether to stay litigation of non-arbitrable claims during arbitration of the parties' arbitrable claims. In cases involving claims by non-parties to an arbitration agreement, the Circuit has indicated that the Court should consider whether allowing litigation to go forward would destroy the parties' right to meaningful arbitration. *Waste Management*, 372 F.3d at 343. In making that determination, the court considered three factors, but noted that they are "neither required nor exhaustive":

> 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be "inherently inseparable"; and 3) the litigation must have a "critical impact" on the arbitration.

*Id.* In *Sam Reisfeld*, the Fifth Circuit also upheld a district court's decision to allow arbitration and litigation to proceed simultaneously, but noted that the arbitrator would not be required to resolve any important legal or factual issues relating to the non-arbitrable claims. 530 F.2d at 681. In this case, the claims to be arbitrated and those to be litigated involve many of the same operative facts, and allowing the litigation of the non-arbitrable claims to proceed could have a significant impact on the arbitration. The Court therefore reluctantly concludes that it should stay litigation of Plaintiff's non-arbitrable claims during the pendency of the parties' arbitration.

## III.   SANCTIONS

The court does not find support for an award of sanctions under 28 U.S.C. § 1927. Defendants' request for sanctions is therefore denied.

## IV.   CONCLUSION

Defendants' Motion to Compel Arbitration, Doc. No. 45, is **GRANTED IN PART AND DENIED IN PART**. The Court will not compel to arbitration Plaintiff's claims for assault and battery; intentional infliction of emotional distress arising out of the alleged assault; negligent hiring, retention, and supervision of employees involved in the assault; and false imprisonment. The Court will stay litigation of these claims until parties complete arbitration of Plaintiff's arbitrable claims.   The Court will compel Plaintiff's remaining claims to arbitration. Defendants' request for an award of sanctions is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this ___9___ day of May, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT