# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JAMIE LEIGH JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-cv-2719 |
| | § | |
| HALLIBURTON COMPANY D/B/A KBR | § | |
| KELLOGG BROWN & ROOT (KBR), | § | |
| ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the KBR Defendants' Motion for Partial Summary Judgment (Doc. No. 150), the KBR Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Partial Summary Judgment (Doc. No. 173), and the KBR Defendants' Motion for Leave of Court to File Reply Brief in Excess of 10-Page Limit (Doc. No. 188).[1] Upon considering the Motions, all responses thereto, and the applicable law, the Court finds that the KBR Defendants' Motion for Partial Summary Judgment (Doc. No. 150) must be granted in part and denied in part, the KBR Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Partial Summary Judgment (Doc. No. 173) must be granted in

---

[1] The KBR Defendants have also filed objections to certain exhibits among Plaintiff's summary judgment proof and her response to the KBR Defendants' motion to dismiss. (Doc. No. 162, 190.) We need not rule on these objections because we do not rely on any of the contested evidence in reaching our conclusion regarding the KBR Defendants' motion to dismiss and motions for summary judgment. In addition, Jones recently filed an opposed Motion for Reconsideration of Plaintiff's Motion for Leave to File a Fifth Amended Complaint. (Doc. No. 209). None of Jones's proposed amendments to her live pleading implicates our analysis of the pending motions for summary judgment. Therefore, we will rule separately regarding the Motion for Reconsideration and proceed to the merits of the pending motions for summary judgment.

part and denied in part, and the KBR Defendants' Motion for Leave of Court to File Reply Brief in Excess of 10-Page Limit (Doc. No. 188) must be granted.[2]

## I.      BACKGROUND

This lawsuit arises from events that occurred while Plaintiff Jamie Leigh Jones ("Plaintiff" or "Jones") was employed by Defendants Halliburton Company d/b/a KBR Kellogg Brown & Root (KBR), Kellogg Brown & Root, Services, Inc., Kellogg Brown & Root International, Inc., Kellogg Brown & Root, LLC, Kellogg Brown & Root, Inc., Kellogg Brown & Root (KBR), Inc., KBR Technical Services, Inc., and Overseas Administrative Services, Ltd. (collectively, the "KBR Defendants" or "KBR").[3] We set forth the following undisputed facts that are relevant to disposition of the pending motions.

Prior to July, 2005, Jones worked for the KBR Defendants in Houston, Texas as an administrative assistant. On July 15, 2005, Jones signed an employment agreement with Defendant Overseas Administration Services, Ltd. ("OAS"), in which she agreed to provide support services to the United States military and to be stationed in Iraq (the "Employment Agreement"). (Doc. No. 150 Ex. E.) OAS hired Jones as part of the LOGCAP III contract, under which some of the KBR Defendants provided support services to the United States military in

---

[2] The KBR Defendants' Motion for Leave of Court to File Reply Brief in Excess of 10-Page Limit (Doc. No. 188) is opposed by Plaintiff.

[3] The KBR Defendants have submitted an affidavit of Mark E. Lowes, Vice President of Litigation for KBR, Inc., to provide detail regarding the existence of and relationships among the entities named as Defendants in this lawsuit. KBR, Inc. (not a named party) is the ultimate parent of the following named Defendants: (a) Kellogg Brown & Root Services, Inc; (b) Kellogg Brown & Root International, Inc; (c) Kellogg Brown & Root LLC (improperly identified as Kellogg Brown & Root, LLC); (d) Kellogg Brown & Root S. de R.L.; (e) KBR Technical Services, Inc.; and (f) Overseas Administrative Services, Ltd. (Lowes Aff. ¶ 2.) With respect to the Defendant named Kellogg Brown & Root (KBR), Inc., this is an improperly named entity. (Lowes Aff. ¶ 3.) With respect to the Defendant named Kellogg Brown & Root, Inc., a division of this entity entered into the LOGCAP contract with the United States Army. On August 1, 2003, Defendant Kellogg Brown & Root, Inc. transferred the LOGCAP contract to Defendant Kellogg Brown & Root Services, Inc., which is a successor in interest under the LOGCAP contract for all purposes. (*Id.* ¶ 4.) Defendants Kellogg Brown & Root Services, Inc., Kellogg Brown & Root Technical Services, Inc., and Overseas Administrative Services, Ltd. worked together as a single operating unit to implement the LOGCAP contract. (*Id.* ¶ 13.) Defendant Halliburton Company was not a party to the LOGCAP contract, but prior to April 5, 2007, was the ultimate parent corporation to the other KBR Defendants and issued overall corporate policies and procedures that governed its various subsidiaries. (*Id.* ¶¶ 14-15.)

Iraq. (Curfman Aff. ¶ 4; Doc. No. 173, Ex. B.) Paragraph 4 of the Employment Agreement contained the following provision: "Your sole recourse for any injury, illness, or death arising out of or in the course of your employment under this Agreement shall be as determined under the provisions of the Defense Base Act." (Doc. No. 173, Ex. C at 1.)

Not long after signing the Employment Agreement, Jones flew to Baghdad, Iraq to begin her assignment with the KBR Defendants. On July 25, 2005, Jones reported for duty at the KBR Defendants' headquarters, which was located in the "Green Zone" of Baghdad. Camp Hope, the housing quarters for KBR employees, was also located in the Green Zone. (Tumbarella Dep. 10:9-10, 11:3-5; Andino Dep. 28:1-2, 49:2-5.) Jones arrived at the KBR headquarters to replace an IT specialist named Sara Tumbarella (also known as Sara Simco). (Tumbarella Dep. 10:22-11:8, 83:13-18.) On July 27, 2005, Jones was transferred from the KBR Defendants' headquarters to the United States Mission Iraq ("USMI") facility to work. (Tumbarella Dep. 23:22-24:1; Adams Dep. 7:3-5, 10:2-4.) Sometime during the evening of July 27, 2005 and the early morning of July 28, 2005, Jones and Defendant Charles Bortz ("Bortz") engaged in sexual intercourse at her room in the Camp Hope barracks. (Bortz Dep. 67:9-15, 93:10-19; Tumbarella Dep. 23:9-16.)

On the morning of July 28, 2005, Jones arrived at the USMI facility to begin work for the day. (Adams Dep. 16:10-12.) After her arrival, Jones contacted a fellow KBR employee, Pete Arroyo ("Arroyo"), and told him that she had been raped by Bortz. (Doc. No. 159, Ex. 12 at 2.) William Goodgine, KBR's security manager, was notified of the rape and he, in turn, notified Ron Boutwell, KBR's human resources manager, and Gabriel Andino ("Andino"), KBR's project manager for the USMI. (Andino Dep. 25:7-16, 116:19-23; Doc No. 159, Ex. 12 at 2.)

Jones was taken to the 86th Combat Support Hospital, also in the Green Zone and sometimes referred to as "86 CASH." (Schulz Dep. 8:21-23, 10:1-3; Doc. No. 159, Ex. 20 at 1.) Jones was accompanied by Kristen Rumba ("Rumba"), a USMI physician's assistant. (Doc. No. 159, Ex. 20 at 1.) Dr. Jodi Schulz ("Schulz"), a staff gynecologist working for the U.S. Army, examined Jones. (Schulz Dep. 13:23-25, 74:10-12.) Schulz performed a sexual assault examination ("SAE") kit and took handwritten notes of her exam of Jones. (Schulz Dep. 14:12-19:7, 26:9-10.) The SAE or "rape" kit was taken by KBR personnel from the hospital to a KBR facility, where it was placed in a safe. (Goodgine Dep. 141:11-142:14.)

Two KBR security personnel accompanied Jones from the hospital to a KBR trailer in Camp Hope, away from her barracks. (Goodgine Dep. 19:13-20:22; Andino Dep. 118:9-16.) Guards were placed outside of the KBR trailer while Jones remained inside. (Goodgine Dep. 21:15-21, 24:2.) A KBR HR employee named Jamie Armstrong ("Armstrong") asked Jones to provide a statement, which both Jones and Armstrong wrote while Jones was in the KBR trailer. (Armstrong Dep. 19:17-22; Goodgine Dep. 27:5-6.) Goodgine and Boutwell joined Armstrong in the trailer with Jones. (Goodgine Dep. 34:5-11.) Goodgine describes Jones as looking "frightened and perplexed" when he met with her in the trailer. (*Id.* 38:13, 161:12-14.)

Heidi McMichael ("McMichael") and Matthew McCormack ("McCormack"), two U.S. Department of State ("DOS") employees that had been notified of Jones's reported rape, arrived at the KBR trailer to interview Jones and take custody of her from the KBR trailer. (Goodgine Dep. 27:7-14; Doc. No. 159, Ex. 12 at 2.) From this point forward, the investigation of Jones's alleged rape was under the control of the DOS. (Doc. No. 159, Ex. 20 at 2.) Goodgine and Andino met with Jones, McMichael, and other DOS employees on July 29, 2005. (Goodgine Dep. 38:22-39:9.) During the meeting, which lasted a few hours, Jones asked whether she would

4

continue receiving her salary, since Goodgine had told her previously that she would no longer be paid.[4] (*Id.* 40:9-18.) Employees of the KBR Defendants told Jones that she had essentially two choices: (1) to "stay and get over it"; or (2) to go home with "no guarantee of a job" either in Iraq or back in Houston. (Doc. No. 159, Ex. 1 at 3.) Jones left Iraq and returned to the United States.[5]

Jones filed a Charge of Discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC") in October 2005. (Doc. No. 150 Ex. B.) In the Charge, Jones stated that the discrimination was based on "sex" and had occurred between July 25, 2005 and July 28, 2005. (*Id.*) Jones described the particulars of the discrimination as being housed in an all-male barracks, which created a hostile work environment, and being drugged and sexually assaulted in her barracks room. She also stated that the KBR Defendants had not responded to her emails regarding her housing in the all male barracks. (*Id.*) Jones's Amended Charge of Discrimination filed in January 2006 was substantially similar to her original EEOC Charge. (Doc. No. 150 Ex. C.) The EEOC conducted an investigation based on the EEOC Charge and issued a Letter of Determination finding cause that the KBR Defendants had violated Title VII of the Civil Rights Act of 1964. (Doc. No. 150 Ex. D at 2.)

---

[4] In her Response to the KBR Defendants' motion for partial summary judgment, Jones contends that Goodgine admitted that she looked "very very scared" during the July 29th meeting among Goodgine, Jones, and the DOS officials. However, Goodgine's deposition testimony shows that he characterized Jones as looking "frightened" during the July 28th meeting at the KBR trailer and, in contrast, "very composed" during the July 29th meeting with the DOS officials. (Goodgine Dep. 40:9, 161:13-14.)

[5] In her response to the KBR Defendants' motion for partial summary judgment, Jones offers the following additional facts. During her trip from Iraq to United States, Jones was accompanied by an employee of the KBR Defendants, Deborah Woodhams ("Woodhams"). Upon her arrival at the airport in the United States, Woodhams informed Jones's father that Jones had forty-eight hours to decide if she was going to return to Iraq. As support for these facts, Jones references a deposition taken of her father, Tom Jones, in the week prior to the filing of her response on March 21, 2011. She states that the transcript from his deposition was not available at the time of filing. To date, Jones has not supplemented her response with evidence to support these facts. As such, we cannot accept these averments as undisputed facts. *See* Fed. R. Civ. P. 56(e)(2); *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) ("[A] party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.") We note that an email among State Department employees confirms that an employee of the KBR Defendants intended to escort Jones from Baghdad to Kuwait, and then from Kuwait to the United States. (Doc. No. 159, Ex. 21.)

Jones filed suit against the KBR Defendants, Bortz, Iler, and several John Doe rapists. In her Fourth Amended Complaint, Jones asserts claims of: (1) negligence by the some of the KBR Defendants; (2) negligent undertaking by the KBR Defendants; (3) sexual harassment and hostile work environment created by the KBR Defendants; (4) retaliation by the KBR Defendants; (5) breach of contract by the KBR Defendants; (6) fraud in the inducement to enter the employment contract by the KBR Defendants; (7) fraud in the inducement to agree to arbitration by the KBR Defendants; (8) assault and battery by Bortz and the John Doe rapists; and (9) intentional infliction of emotional distress by the KBR Defendants.[6] (Doc. No. 53.)

In a prior memorandum and order (the "May 2008 Order"), we addressed the KBR Defendants' motion to compel arbitration of Jones's claims. (Doc. No. 65.) After holding that a valid agreement to arbitrate existed between Jones and the KBR Defendants, we held that four of Jones's claims fell beyond the reach of the broad arbitration provision. (*Id.* at 15-16.) Specifically, we held that Jones was not compelled to arbitrate her claims of: (1) assault and battery; (2) intentional infliction of emotional distress arising out of the alleged assault; (3) negligent hiring, retention, and supervision of employees involved in the alleged assault; and (4) false imprisonment.[7] (*Id.* at 24.) We compelled Jones's remaining claims to arbitration and stayed the litigation of the non-arbitrable claims until the parties completed arbitration of the arbitrable claims. (*Id.*)

The KBR Defendants appealed the holdings of the May 2008 Order to the Court of Appeals for the Fifth Circuit.  The Fifth Circuit affirmed the May 2008 Order and remanded (the "Fifth Circuit Order"). (Doc. No. 80.) The Court then vacated the stay upon the parties'

---

[6] Jones also asserted a claim of negligence by Defendant United States of America, but later dismissed this claim. (Doc. Nos. 38, 68.)
[7] We noted that Jones's Fourth Amended Complaint did not include a separate claim of false imprisonment, but that language in the complaint and representations by Jones's counsel indicated that she is asserting a claim of false imprisonment. (Doc. No. 65 at 3 n.4.)

representation that they would be amenable to proceeding with the four non-arbitrable claims while the other claims proceeded in arbitration. (Doc. No. 85.) The parties have subsequently agreed to withdraw Jones's arbitrable claims from the arbitration proceeding and litigate them in this Court.[8] (Doc. No. 195). As such, Jones's live claims against Defendants are the following: (1) negligence by the some of the KBR Defendants; (2) negligent undertaking by the KBR Defendants; (3) sexual harassment and hostile work environment created by the KBR Defendants; (4) retaliation by the KBR Defendants; (5) breach of contract by the KBR Defendants; (6) fraud in the inducement to enter the employment contract by the KBR Defendants; (7) fraud in the inducement to agree to arbitration by the KBR Defendants; (8) assault and battery by Bortz and the John Doe rapists; (9) intentional infliction of emotional distress by the KBR Defendants; and (10) false imprisonment.

## II.      SUBJECT MATTER JURISDICTION

The KBR Defendants have moved to dismiss Jones's common law claims against them for lack of subject matter jurisdiction. Specifically, KBR contends that the Defense Base Act ("DBA"), 42 U.S.C. § 1651, *et seq.*, provides the exclusive remedy by which Jones can recover on her common law claims, and preempts all other liability under the common law on the part of the KBR Defendants for these injuries. Jones contends that the May 2008 Order and the Fifth Circuit Order has already resolved this issue in her favor. According to Jones, these prior rulings have held that Jones's claims do not arise out of or in the course of her employment, and thus do not fall within the scope of the DBA.

### A.  Legal Standard – Subject Matter Jurisdiction

---

[8] By filing their motions to dismiss and for summary judgment, the KBR Defendants have substantially invoked the judicial process regarding the arbitrable claims. We will assume that they have waived their right to arbitration. *See In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991).

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

A district court may determine its subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). An attack on subject matter jurisdiction may be "facial," where the district court accepts the facts in the plaintiff's complaint as true, or "factual," where the trial court is free to weigh the evidence and to make factual findings decisive of determination. *Williamson*, 645 F.2d at 413-14. "If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

**B.  Prior Rulings in the Case**

This is not the first time that the Court has been asked to take note of the DBA in this case. The KBR Defendants moved in 2007 to compel arbitration of Jones's claims against them. (Doc. No. 45.) We disposed of that motion in the May 2008 Order. The May 2008 Order specifically analyzed whether Jones's claims against the KBR Defendant fell within the scope of the valid arbitration clause in her employment agreement. We noted that the arbitration clause was a "broad" provision because it covered "any and all claims . . . *related* to your employment . . . ." (May 2008 Order at 15.) Despite the broad nature of the arbitration provision, we found that four claims brought by Jones did not relate to her employment.  These four claims were unrelated to her employment because she "could maintain these claims without reference to *her own employment*." (May 2008 Order at 16. (emphasis added)) In arriving at this conclusion, we addressed the KBR Defendants' argument that the Fifth Circuit's interpretation of "scope of employment" in the context of the DBA should also apply in the context of a broad arbitration provision. We reviewed the Fifth Circuit's holding in *O'Keeffe v. Pan American Airways, Inc.*, 338 F.2d 319 (5th Cir. 1964), that an accident involving a man killed in a traffic accident on the island of Grand Turk occurred within the scope of the man's employment. The Fifth Circuit had noted in *O'Keeffe* that "personal activities of a social or recreational nature must be considered as incident to the overseas employment relationship." *Id.* at 322. We also noted that Jones was receiving worker's compensation payments under the DBA. However, we declined to incorporate the liberal interpretation of the term "scope of employment" in the worker's compensation context into the interpretation of an arbitration provision. (May 2008 Order at 20.) We did not address whether the DBA was Jones's exclusive remedy for her common law claims, nor did we find that Jones's claims fell within the scope of the DBA.[9]

---

[9] Our May 2008 Order simply noted that Jones's sexual assault "*might* be considered within Plaintiff's 'scope of employment' for worker's compensation purposes." (May 2008 Order at 21 (emphasis added)).

The Fifth Circuit affirmed our May 2008 Order. (Doc. No. 80.) In so doing, the panel concluded that the liberal construction of "scope of employment" for purposes of workers' compensation is not necessarily the same standard to be applied when construing an arbitration provision containing similar language. (*Id.* at 15.) The panel noted that, in *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504 (1951), the Supreme Court held that a worker was entitled to compensation under the DBA not just in situations involving a causal relationship between the accident and the nature of the worker's employment, but also in situations where the obligations or conditions of employment create a "zone of special danger out of which the injuries arose." *Id.* at 506-07. As such, the Fifth Circuit did not think it was contradictory for Jones to receive workers' compensation under a standard that allows recovery solely because her employment created the "zone of special danger" which led to her injuries, yet claim, in the more restrictive context of arbitration, that the allegations this Court deemed non-arbitrable did not have a "significant relationship" to her employment contract. (Doc. No. 80 at 16-17.) Significantly, the panel analyzed several cases that had awarded workers' compensation to individuals based on injuries suffered while the individuals were living in employer-provided housing and concluded that, "[e]ven within the context of workers compensation, . . . simply living in employer-provided housing does not mean an injury occurring in that housing necessarily arises 'out of and in the course of employment'." (*Id.* at 17.) The Fifth Circuit did not make any finding as to whether Jones's injuries fell within the scope of the DBA.

As the preceding discussion shows, both this Court and the Fifth Circuit have examined the applicability of the DBA to this case, but have done so only to determine whether Jones's claims are "related to" her employment in the context of the arbitration agreement. Neither the Fifth Circuit Order nor our May 2008 Order answered the questions presented here: (1) whether

Jones's injuries arose out of and in the course of her employment under the DBA; and (2) whether, by seeking and obtaining compensation under the DBA, Jones is barred from bringing her common law claims in this Court. We address these questions in turn below.

### C.  Evidence Presented for Our Review

The KBR Defendants state that they are making a "factual" attack on subject matter jurisdiction. As evidence in support of their motion, the KBR Defendants present the LOGCAP III contract between the KBR Defendants and the U.S. government, Jones's Employment Agreement, the KBR Code of Business Conduct, Bortz's Acknowledgment of the KBR Code of Business Conduct, and an affidavit of Mark Lowes describing the legal relationship among the KBR Defendants. In addition, the KBR Defendants cite to various portions of the Fourth Amended Complaint in support of their argument. They do not use any of the evidence submitted in support of their motion to contradict allegations in the Fourth Amended Complaint. In turn, Jones does not dispute any of the evidence proffered by the KBR Defendants. She proffers the Employer's First Report of Injury form submitted by the KBR Defendants to the U.S. Department of Labor, Office of Workers' Compensation Programs ("OWCP"). In reply, the KBR Defendants proffer stipulations entered in an OWCP proceeding between Jones and the KBR Defendants. None of these documents are disputed as having been submitted in the OWCP proceeding. Thus, we rest our analysis on the complaint supplemented by undisputed facts evidenced in the record. *See Rodriguez*, 628 F.3d at 734.

### D.  Whether Jones's Injuries are Covered by the DBA

The first question we must address is whether Jones's injuries fall within the scope of the DBA. The DBA extends and incorporates the provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, to provide federal workers'

compensation coverage for injuries suffered by certain classes of employees working outside the

continental United States, including on military bases. 42 U.S.C. § 1651(a).  The purpose of the

DBA is to "provide uniformity and certainty in availability of compensation for injured

employees on military bases outside of the United States." *Davila-Perez v. Lockheed Martin*

*Corp.*, 202 F.3d 464, 468 (1st Cir. 2000). A covered "injury" under the LHWCA is an:

> accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

33 U.S.C. § 902(2). Compensation under the LHWCA is payable "irrespective of fault as a cause

of the injury, and the concept of proximate cause, as it is applied in the law of torts, is not

applicable." *Southern Stevedoring Co. v. Henderson*, 175 F.2d 863, 864 (5th Cir. 1949).

The remedy provided by the LHWCA "shall be exclusive and in place of all other

liability of such employer to the employee, his legal representative, husband or wife, parents,

dependents, next of kin, and anyone otherwise entitled to recover damages from such employer

at law or in admiralty on account of such injury or death . . . ." 33 U.S.C. § 905(a); *see also* 42

U.S.C. § 1651(c) (exclusivity provision of DBA). "Section 5 of the Longshoremen's and Harbor

Workers' Compensation Act destroys any underlying tort liability of the employer." *Robin v. Sun*

*Oil Co.*, 548 F.2d 554, 556 (5th Cir. 1977); *see also Nations v. Morris*, 483 F.2d 577, 587-88

(5th Cir. 1973) (exclusivity provision of LHWCA "completely obliterates the rights at common,

civil or maritime law against Employer and fellow employee"); *Pulley v. Peter Kiewit Son's Co.*,

223 F.2d 191, 194 (7th Cir. 1955). "[A]n employer that secures insurance coverage for its

employees as required by the DBA is entitled to immunity under the LHWCA." *Colon v. U.S.*

*Dep't of Navy*, 223 F. Supp. 2d 368, 369 (D. P.R. 2002) (citing *Davila-Perez*, 202 F.3d at 468-69).

The exclusive remedy provision of the DBA clearly requires that, if Jones's injuries fall within the scope of the DBA, she must bring her claims under the DBA and cannot pursue common law claims against the KBR Defendants arising out of her injuries. Jones does contest that the DBA provides an exclusive remedy for a covered injury. Instead, she argues that her injuries do not fall within the scope of the DBA. Thus, we must determine whether Jones's injuries are "accidental injur[ies] or death arising out of and in the course of employment."[10]

### 1.   Arising Out of and in the Course of Employment

The DBA covers injuries that arise out of or in the course of employment, a standard that relaxes the common law notions of causation:

> Workmen's compensation is not confined by common-law conceptions of scope of employment. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose.

*O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 506-07 (1951) (omitting internal citations); *see also Gondeck v. Pan American World Airways, Inc.*, 382 U.S. 25, 27 (1965). In *O'Leary*, an employee of a government contractor operating in Guam drowned while attempting to rescue two swimmers. The contractor operated a recreation center for its employees near the shoreline, along which ran a dangerous channel where posted signs prohibited swimming. The

---

[10] Another prerequisite to the exclusive coverage of the DBA is that the injured employee is among one of the covered classes of employees. Covered employees include those engaged in employment outside the continental United States under a contract entered into by the employer with the United States government for the purpose of engaging in "public work" within the meaning of the DBA. 42 U.S.C. §§ 1651(a)(4), (b)(1). The KBR Defendants contend that Jones was employed outside the United States, under a contract between OAS and the U.S. government, and that the contract involved "public work." Jones does not contest these facts. We find that there is competent summary judgment evidence—in the form of Jones's employment contract with OAS and the LOGCAP III contract—to conclude that Jones falls within the class of employee covered in 42 U.S.C. § 1651(a)(4).

deceased employee had seen the swimmers in distress while waiting for a bus at the recreation

center. The Supreme Court held that the employee's death was a covered injury because the

employee, at the time of his drowning, was using the recreational facilities sponsored and

provided by his employer for the use of its employees and that such participation was an incident

of his employment. 340 U.S. at 506. The Court noted that the employee's death "may be fairly

attributable to the risks of the employment." *Id.* at 509. "A reasonable rescue attempt, like

pursuit in aid of an officer making an arrest, may be 'one of the risks of the employment, an

incident of the service, foreseeable, if not foreseen, and so covered by the statute.'" *Id.* at 507

(citing *Matter of Babington v. Yellow Taxi Corp.*, 164 N.E. 726, 727 (N.Y. 1928)).

In *O'Keeffe v. Pan Am. World Airways, Inc.*, 338 F.2d 319 (5th Cir. 1964), the Fifth

Circuit upheld the award of DBA benefits to an employee who worked on Grand Turk Island for

a government contractor and was killed while returning to a military base from a social visit off-

base. The Fifth Circuit stated that "employment in such places as Grand Turk creates a zone of

special danger linking the injury with the place of employment. On such an island, lacking in

most of the social and recreational facilities usually available to American employees, the

individual's recreation is in the service of his employer no less than in his own interest." *Id.* at

325.

Based on these cases and others, the KBR Defendants argue that Jones's deployment to

Iraq created a zone of special danger that links her alleged injuries to her place of employment.

Specifically, the KBR Defendants note that Jones was employed, at the time of her injuries, at

Camp Hope, Iraq, that her sexual assault occurred while she was in her KBR-provided living

quarters, and that her sexual assault was committed by a KBR coworker. All of these

characteristics of Jones's employment, according to the KBR Defendants, created a zone of special danger such that Jones's alleged injuries fall within the DBA.

The KBR Defendants' arguments are spurious. The KBR Defendants conflate the undisputable character of Iraq as a dangerous place of employment with the requirement under the DBA that the "*obligations or conditions of employment* create the zone of special danger out of which the injury arose." *O'Leary*, 340 U.S. at 506-07 (emphasis added). The "zone of special danger" standard requires a court to focus not only upon the place of employment, but also upon the conditions and obligations of the employment. The KBR Defendants do not explain how the conditions or obligations of Jones's employment in Iraq created a zone of special danger. Based on our review of the conditions and obligations of Jones's employment for the KBR Defendants in Iraq, it is clear that they did not create a zone of special danger, in the context of workers' compensation, out of which her alleged injuries—sexual harassment and sexual assault—arose.

First, Jones's employment in an overseas locale, and specifically within the Iraqi war zone, does not constitute in itself a condition of employment creating a zone of special danger *out of which the sexual harassment or sexual assault by her KBR coworkers arose*. A post in the Green Zone, with its restrictive living and hazardous working conditions, may create a zone of special danger for some types of injuries. For example, in *Service Employees Int'l, Inc. v. Director, Office of Workers Compensation Program*, 595 F.3d 447 (2d Cir. 2010), the plaintiff worked for one of the KBR Defendants in Iraq to drive a fuel tank truck and deliver fuel throughout Iraq. His working conditions were comprised of thirteen-hour days, seven days a week, in hot, dry, dusty, and windy conditions. The Second Circuit held that there was substantial evidence that the plaintiff's eye conditions were caused by his working conditions in Iraq. Similarly, in *Pulley v. Peter Kiewit Son's Co.*, 223 F.2d 191 (7th Cir. 1955), the plaintiff

15

was stationed in Greenland, which was "an isolated community and the only facilities for water supplies, food, medical and dental care were supplied by defendants." *Id.* at 192. While the plaintiff ate at the company cafeteria, he bit into a stone in his food and injured his tooth. The resulting provision of dental services on the base further aggravated the injury. The court found that this injury was related to plaintiff's employment. We draw support from these cases for the principle that a *particular* condition or obligation of employment overseas (such as environmentally harsh working conditions or restriction to the company cafeteria and dental services), not merely the fact of overseas employment, must create a zone of special danger. Further, the zone of special danger must be one that gives rise to the particular type of injury suffered by the employee. Therefore, dry, hot, and dusty working conditions may create a zone of special danger for eye injuries that are linked to such conditions, but may create no zone of special danger for hypothermia.

Here, we labor to find any indication that Jones's work overseas, in itself, created a zone of special danger for being sexually assaulted or harassed by KBR coworkers. Jones's Employment Agreement with OAS explicitly outlines some risks of employment overseas, such as terrorism, war, rebellion, labor strike or unrest, civil strife, and capture, and disclaims the KBR Defendants' liability for injuries arising out of those events. (Doc. No. 173 Ex. C at 1.) Yet the Employment Agreement also incorporates the KBR Defendants' Code of Business Conduct and mandates that the "following standards for personal conduct are conditions of employment." (*Id.* at 9.) These standards include avoiding misconduct, such as committing immoral acts, avoiding endangering the health and safety of other employees, and, most importantly, a prohibition on sexual harassment. (*Id.* at 10-11.) Thus, it is clear that Jones's work in Iraq under the Employment Agreement did not place her in a zone of special danger for sexual assault and

harassment, since the KBR Defendants specifically prohibited this type of behavior for their employees working under the LOGCAP III contract.

Adopting the KBR Defendants' argument—that the mere fact of employment in a dangerous place brings an employee's injury under the DBA's provisions—would make superfluous the DBA's requirement that the injury be within the course or scope of employment.[11] The cases cited by the KBR Defendants in support of this argument are unhelpful. In three of the cases, it appears undisputed that the plaintiff's injury arose out of and in the course of his employment and the courts did not address whether, by virtue of the plaintiff's employment overseas or some other condition or obligation of employment, the injury arose out of a zone of special danger. *See Ross v. DynCorp*, 362 F. Supp. 2d 344 (D.D.C. 2005); *Colon v. U.S. Dep't of Navy*, 223 F. Supp. 2d 368 (D.P.R. 2002); *Berven v. Fluor Corp.*, 171 F. Supp. 89 (S.D.N.Y. 1959). In *Carr v. Lockheed Martin Tech. Svcs.*, 1999 WL 33290613 (W.D. Tex. Feb. 8, 1999), the dispute between the parties, and the one addressed by the court, focused on which injury was the basis of the plaintiff's claims. It was undisputed that one injury—plaintiff's detached retina—was not related to plaintiff's employment because it was sustained while plaintiff was on honeymoon in Turkey. The other injury—plaintiff's blindness—occurred while plaintiff endured a 17-day delay in being transported back from Turkey to the United States for

---

[11] In the context of the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 1801 *et seq.*, the Fifth Circuit and other courts have rejected the adoption of the "premises rule," which states that an injury suffered by an employee is compensable if it occurs on the employer's premises. *See Wallace v. United States*, 669 F.2d 947, 952 (4th Cir. 1982); *Bailey v. United States*, 451 F.2d 963, 966 (5th Cir. 1971) (citing *United States v. Browning*, 359 F.2d 937, 940 (10th Cir. 1966)); *United States v. Udy*, 381 F.2d 455, 458 (10th Cir. 1967). The location of the accident is "one of the factors to be considered in determining" coverage under FECA, but it is not the "sole criteria." *Bailey*, 451 F.2d at 966. Rather, courts are instructed to look at the "totality of the circumstances surrounding the injury," including, but not limited to whether the injury occurred on the employer's premises, in order to determine whether the "employee was injured as a result of a 'zone of special danger' created by the conditions of his employment." *Id.* at 966-67. We draw from these cases support for the principle that the mere fact of Jones's employment in Iraq is insufficient to create a zone of special danger for any injury that might occur while she was in Iraq. We must take into account other factors, including, but not limited to, the type of injury she suffered and the specific conditions of her employment, to determine whether her injuries fall within the scope of the DBA.

surgery. The court did not address whether the locale of plaintiff's employment was a relevant factor in determining whether plaintiff's injury was related to his employment.

Second, the requirement that Jones live in KBR-provided housing is not a condition or obligation of employment that created a zone of special danger out of which Jones's sexual harassment or sexual assault arose. As noted in the Fifth Circuit Order in this case, the current state of the law with regard to workers' compensation for resident-employees is as follows:

> Injuries to employees required to live on the premises are generally compensable if one of the two following features is present: either the claimant was *continuously on call*, or the source of the injury was a *risk distinctly associated with the conditions under which the claimant lived* because of the requirement of remaining on the premises.

Fifth Circuit Order at 18 (quoting 2 Arthur Larson & Lex. K. Larson, Larson's Workers' Compensation Law, § 24.01, 24-02 (2009)) (emphasis added). With respect to the latter characteristic, one court has stated, "[i]n order for the bunkhouse rule to apply, it must be shown, among other things that the source of the injury is a risk *distinctly associated* with the conditions under which the claimant lived." *Littles v. Osceola Farms Co.*, 577 So. 2d 657, 658 (Fla. Dist. Ct. App. 1st Dist. 1991) (emphasis added) (quoting *Mecca Farms, Inc. v. Espino*, 414 So.2d 572, 574 (Fla. 1st DCA 1982)). In *Littles*, an employee was stabbed by his estranged lover while staying in a hospital where he had obtained medical care for hand injuries sustained during his employment. The court found that the employee's death "resulted from an event that was purely personal to the employee" and was not a risk distinctly associated with his stay in the hospital. *Id.* In contrast, in *Hotard v. Devon Energy Prod. Co. L.P.*, 308 Fed. Appx. 739, 743 (5th Cir. 2009), the Fifth Circuit held that a spider bite suffered by an employee while sleeping on an off-shore platform was related to his employment because living on defendant's off-shore oil platform was a necessary condition of working offshore.

Here, neither of the features noted by Larson apply. Jones was not continuously on call while working for the KBR Defendants in Iraq, and her alleged sexual assault occurred while she was off-duty. *See Gondeck*, 382 U.S. at 26 (injury covered under DBA in part because employee was subject to call for emergencies while off duty); *O'Keeffe*, 338 F.2d at 322-23 (employee's injury covered under DBA in part because employee was off-duty but subject to call when injury occurred); *Taylor v. Kellogg Brown & Root*, No. H-10-2043, 2011 slip op. at 14 (S.D. Tex. May 20, 2011) (plaintiff's injuries occurred within the scope of her employment because they occurred while she was on duty in the employer's break room). Neither were the alleged sexual assault or the sexual harassment Jones suffered "risk[s] distinctly associated with the conditions" under which Jones lived. Jones may have been at risk for some types of injuries, such as the spider bite in *Hotard*, but we cannot say that sexual harassment or sexual assault would be a risk *distinctly* associated with living in KBR-provided housing in Camp Hope.

Third, Jones's limited opportunities for social and recreational activities, a condition of employment by the KBR Defendants in Camp Hope, did not create a zone of special danger out of which her sexual harassment and sexual assault arose. In *O'Leary*, *Gondeck*, and *O'Keeffe*, the employees were injured on their way from engaging in social and recreational activities in locations where the availability and range of these activities was severely limited. "Personal activities of a social or recreational nature must be considered as incident to the overseas employment relationship." *O'Keeffe*, 338 F.2d at 322. As such, courts have held that "injuries resulting from reasonable and foreseeable recreational activities in isolated or dangerous locales arise out of a 'zone of special danger' and are therefore compensable under the LHWCA." *Kalama Svcs., Inc. v. Director, Office of Workers Compensation Programs*, 354 F.3d 1085, 1091 (9th Cir. 2004) (collecting cases). Thus, in *Self v. Hanson*, 305 F. 699, 702 (9th Cir. 1962),

injuries sustained by a female employee while she rendezvoused with a male officer were held to be within the scope and course of her employee because they occurred during recreational activities she had chosen for herself. However, "injuries resulting from recreational activities that are neither reasonable nor foreseeable generally fall outside the 'zone of special danger.'" *Kalama*, 354 F.3d at 1091-92 (collecting cases).

Here, Jones's sexual assault and sexual harassment alleged occurred while Jones was in the barracks and not while she was engaged in social or recreational activities. Although her injuries may have occurred directly before or after Jones was engaged in social or recreational activities, we cannot say that Jones was engaged in the type of social or recreational activities that would make sexual assault or sexual harassment a reasonable or foreseeable risk of her employment.[12] *Cf. Kalama*, 354 F.3d at 1092 ("[T]he presence of social clubs serving alcohol to employees who experience lengthy periods of isolation on the atoll creates a foreseeable risk that horseplay might take place from time to time."); *Turner v. Willard*, 154 F. Supp. 352, 355-56 (S.D.N.Y. 1956) (injuries sustained while discussing recreational bowling league for employees within scope of the LHWCA). We cannot equate horseplay engaged in by inebriated employees while at a drinking establishment with a sexual assault endured by an employee while in her barracks room and away from the social activities engaged in by her coworkers. Moreover,

---

[12] We note that, as part of Jones's negligence claims against the KBR Defendants, she is required to show that the injuries she suffered were proximately caused by the KBR Defendants' breach of a duty owed towards her. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). In Texas, proximate cause consists of two parts: (1) cause in fact and (2) foreseeability. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Id.* at 478. Although the social and recreational activities engaged in by Jones and her KBR coworkers did not create a reasonable and foreseeable risk of sexual harassment or rape, it may be that the KBR Defendants' negligent acts created a danger for sexual harassment or rape. In the context of the workers' compensation analysis, the focus is upon the conditions and obligations of employment and whether those create a zone of special danger. In contrast, in the negligence analysis, the focus is upon the defendants' negligent acts and whether they create a foreseeable risk of injury. We do not believe foreseeability in the workers compensation context is identical to foreseeability in the negligence context.

Jones's alleged sexual assault is not a voluntary recreational activity in which she chose to engage.

In sum, we believe that Jones's injuries were not ones arising out of or in the scope of her employment.[13] There were no conditions or obligations in her employment in Camp Hope, Iraq, the requirement that she live in KBR-provided housing, or her limited recreational and social opportunities that created a zone of special danger for the sexual harassment and sexual assault she alleged suffered. Jones was allegedly attacked at night, while she was in her barracks room, and when she was off-duty. We view the situation in which Jones suffered her injuries as so far from her employment and so thoroughly disconnected from the service to her employer that it would be entirely unreasonable to say that the injuries she suffered arose out of and in the course of her employment. *See O'Leary*, 340 U.S. at 506-07. Therefore, Jones's injuries are not injuries within the scope of the DBA. The DBA's exclusive remedy provision does not apply to preclude Jones from bringing common law claims against the KBR Defendants.

### 2.      Accidental Injury

The KBR Defendants also contend that Jones's intentional tort claims—intentional infliction of emotional distress, breach of contract, false imprisonment, and fraudulent inducement—should be barred along with her negligent tort claims. Specifically, the KBR Defendants argue that, for intentional torts, only proof of the employer's specific intent to injure

---

[13] Recent decisions in the Southern District of Texas involving the KBR Defendants and similar claims against them are not directly applicable to the facts and legal issue presented here. In *Fisher v. Halliburton*, 703 F. Supp. 2d 639, 646 (S.D. Tex. 2010), the court held that some of the plaintiffs' injuries were not "accidental" within the meaning of the LHWCA and, therefore, the common law claims based on these injuries were not barred by the LHWCA's exclusivity provision. The court *sua sponte* certified its holding regarding the definition of "accidental" and "because of his employment" in 33 U.S.C. § 902(2) for interlocutory appeal. In *Mayo v. Halliburton*, 2010 WL 4366908 (S.D. Tex. Oct. 26, 2010), the court stayed the litigation of the case pending the outcome of the appeal in *Fisher*. In *Taylor v. Kellogg Brown & Root*, No. H-10-2043, 2011 slip op. (S.D. Tex. May 20, 2011), the court took note of the *Fisher* litigation, but reached the question of whether the plaintiff's injuries were "accidental." The focus of these cases upon the definition of the word "accidental" in 33 U.S.C. § 902(2) separates them from our analysis of whether Jones's injuries "arose out of or in the scope of her employment."

will allow a plaintiff to circumvent the DBA's exclusivity provision. In addition, the KBR Defendants urge us to reject the definition of "accidental" as "undesired and unexpected" that was provided in *Fisher v. Halliburton*, 703 F. Supp. 2d 639, 646 (S.D. Tex. 2010), because the definition conflicts with Fifth Circuit precedent and the United States's own interpretation of the DBA. In response, Jones contends that her injuries were not "accidental" within the meaning of the DBA.

In certain circumstances, the exclusivity provision of the DBA can be breached. As one leading treatise has stated, "when an employer intentionally committed the act," the injury is not "accidental" and does not fall under the exclusive provision of the workers' compensation act. 6 Larson's Workers' Compensation Law § 103.01, at 103-3 (2010)). In order to avoid the exclusivity provision of the LHWCA, an employee must show that the employer possessed a "specific intent to injure" the employee. *See Houston v. Bechtel Assoc. Prof. Corp.*, 522 F. Supp. 1094, 1096 (D.C. D.C. 1981). However, "[s]ince the legal justification for the common-law action is the *non-accidental character of the injury from the defendant employer's standpoint*, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury." 6 Larson's Workers' Compensation Law § 103.03, at 103-6 to 103-7 (emphasis added). Courts have interpreted this language to bar a wide variety of common law claims based on the employer's negligence, recklessness, or willful and wanton misconduct. *See, e.g.*, *Sample v. Johnson*, 771 F.2d 1335 (9th Cir. 1985) (no specific intent to injure found where complaint did not allege plaintiffs suffered severe emotional distress or that it was inflicted intentionally); *Roy v. Bethlehem Steel Corp.*, 838

F. Supp. 312, 316 (E.D. Tex. 1993) (no specific intent to injure where employer was grossly negligent or reckless in following its own policies); *Johnson v. Odeco Oil & Gas, Co.*, 679 F. Supp. 604 (E.D. La. 1987), *aff'd* 864 F.2d 40 (5th Cir. 1989) (finding no specific intent to injure in plaintiff's claim of willful and wanton misconduct of employer in failing to maintain and repair oil platform).

However, we need not engage in an analysis of whether Jones's intentional tort claims are supported by a showing of the KBR Defendants' specific intent to inflict an injury upon her. Rather, because we find that Jones's injuries did not arise out of or in the course of her employment agreement, the exclusivity provisions of the LHWCA and the DBA do not apply to any of her common law claims, including the intentional tort claims.

### 3.  Injury Caused by Third Party

Finally, the KBR Defendants argue in a footnote that Jones's injuries fall within the scope of the DBA because they are injuries "caused by the willful act of a third person directed against an employee because of his employment." 33 U.S.C. § 902(2). The KBR Defendants cite no case law supporting their argument that Jones was assaulted or harassed because of her employment. Assuming *arguendo* that Bortz's sexual assault and the KBR employees' sexual harassment are willful acts, we find that the KBR Defendants have submitted no evidence that these acts were inflicted upon Jones because of her employment with KBR. *See Paterson*, 644 F.2d at 523 (in factual attack upon subject matter jurisdiction, defendant must come forward with evidentiary materials after which plaintiff must submit facts to prove by preponderance of the evidence that subject matter jurisdiction exists). Therefore, we cannot conclude that Jones's injuries fall within the DBA because they were caused by willful acts inflicted upon her due to her employment with the KBR Defendants.

23

### E.  Effect of Prior DBA Proceedings

The KBR Defendants contend that Jones's admissions during prior administrative proceedings and her receipt of compensation under the DBA conclusively determines the question of whether her injuries are covered under the DBA. The KBR Defendants submit a set of stipulations that were entered in proceedings before the U.S. Department of Labor, Office of Workers' Compensation Programs ("OWCP"), in which Jones stipulates that the LHWCA applied to her claim, that the relevant injury is the one sustained on July 28, 2005, and that the injury arose out of and in the course of her employment with the KBR Defendants. (Doc. No. 189 Ex. K.) They also submit an excerpt from Jones's deposition in which she states that she receives compensation under the DBA. In contrast, Jones submits a form entitled, "Employer's First Report of Injury," in which the KBR Defendants reported Jones's alleged sexual assault to the OWCP on July 29, 2005. (Doc. No. 186, Ex. 14.) In this form, the KBR Defendants reported Jones's injury under the Defense Base Act, stated that Jones was not doing her usual work when she was injured, and further stated that Jones's injury did not occur on her employer's premises. (*Id.*) Importantly, instructions accompanying the form state that a "reportable injury" consists of "any accidental injury . . . allegedly arising out of and in the course of employment." (*Id.*) Further, filing such a form does not constitute an admission of liability under the DBA. (*Id.*)

The KBR Defendants argue that Jones, by collecting benefits under the DBA, is precluded from bringing her common law claims. They cite an unpublished Fifth Circuit case, *Synogrand v. Morvan*, 205 Fed. Appx. 294, 296 (5th Cir. 2006), which held that, under Texas law, an employee who claims and collects workers' compensation benefits under the Texas Workers' Compensation Act is precluded from maintaining an action at common law against his employer. The KBR Defendants' argument seems to turn on two different legal theories. First,

Jones's admission during the OWCP proceedings is binding upon her in this Court. Second, Jones has elected her remedy as one under the DBA and therefore cannot pursue remedies outside of those she has obtained under the DBA.

As to the first argument, we do not believe that collateral estoppel, or issue preclusion, prevents Jones from litigating in this Court the issue of whether her injuries arose out of or in the course of her employment.[14] The rule of collateral estoppel instructs that, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude litigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "Collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005). "The party seeking to assert that an issue was already adjudicated upon bears the burden of proving that contention, particularly where the record is ambiguous or confusing." *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir. 1986). Here it is clear that determination of the scope of employment issue was necessary to the OWCP's award of benefits to Jones. However, it is unclear from the limited record presented to us whether the issue of Jones's scope of employment was at stake in the OWCP proceedings and whether it was actually litigated. Jones's stipulations do not have issue-preclusive effect. *Ariz. v. Cal.*, 530 U.S. 392, 415 (2000) (Tax Court decision, entered pursuant to the parties' stipulations, has no issue preclusion effect);

---

[14] Even under the doctrine of res judicata, or claim preclusion, we decline to give preclusive effect to the prior OWCP proceedings. Claim preclusion applies where the parties to both actions are identical or in privity, the first judgment was rendered by a court of competent jurisdiction and concluded with a judgment on the merits, the same claim or cause of action is involved in both suits, and all claims or defenses arise from a common nucleus of operative facts. *See Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 664-65 (5th Cir. 1994). Here, we have not been presented any judgment or award on the merits issued by the OWCP. As such, we are not convinced that we have all of the relevant facts before us and are unable to determine whether the elements of claim preclusion are satisfied. *GLF Constr. Corp. v. LAN/STV*, 414 F.3d 553, 555 n.2 (5th Cir. 2005).

*Jack Faucett Associates, Inc. v. American Tel. & Tel. Co.*, 744 F.2d 118 (D.C. Cir. 1984) ("Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion."). Thus, the KBR Defendants have not met their burden in establishing that the stipulations in the OWCP proceedings have preclusive effect in this Court.

As to the second argument, the DBA does not contain an election of remedies provision allowing Jones to choose whether to proceed under the DBA for covered injuries or to proceed outside of the DBA. *See Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 52 (9th Cir. 1966). Rather, if Jones's injuries are covered by the DBA, the DBA provides her with her only remedy. For the reasons stated above, we do not defer to the OWCP's decision to award benefits to Jones as determinative and preclusive of the question of whether Jones's injuries are covered by the DBA. Rather, we must independently determine whether Jones's injuries arise out of or in the scope of her employment. In this opinion, we have found that Jones's injuries do not arise out of or in the scope of her employment. Therefore, Jones's receipt of compensation under the DBA does not bar her from proceeding on her common law claims against the KBR Defendants.[15]

## III.    SUMMARY JUDGMENT LEGAL STANDARD

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  Fed. R. Civ. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).  A

---

[15] Due to this holding, we need not address the KBR Defendants' argument that the exclusivity provision of the DBA bars Jones's claims against each KBR Defendant. (Doc. No. 173 at 19-21.)

genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the movant meets this burden, then the nonmovant is required to go beyond its pleadings and designate, by competent summary judgment evidence, the specific facts showing that there is a genuine issue for trial. *Id.* The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## IV.   SUMMARY JUDGMENT ANALYSIS

### A.  Plaintiff's Common Law Claims Barred by TCHRA

The KBR Defendants contend that Jones's common law claims that arise out of her alleged sexual assault and sexual harassment in Iraq are barred by the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.* Specifically, the Texas Supreme Court in *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010), held that, "[w]here the gravamen of a plaintiff's case is TCHRA-covered harassment, the Act forecloses common-law theories predicated on the same underlying sexual-harassment facts." According to the KBR Defendants, Jones's common law claims are based on her allegations of Bortz's sexual

harassing conduct and the KBR Defendants' alleged conduct before and after the alleged sexual assault. Thus, Jones's common law claims are inextricably intertwined with her TCHRA-covered sexual harassment claim and are barred by the TCHRA. Jones, in response, contends that her claims do not all relate to the alleged sexual assault and sexual harassment she suffered.

The applicability of *Waffle House* to this case is not immediately apparent. Jones has not pled any claims of violations of the TCHRA.[16] Rather, Jones has pled a claim of sexual harassment and hostile work environment arising under Title VII, the federal antidiscrimination law, and several state common law claims.

It is well established that Title VII does not deprive a non-federal employee of other remedies he possesses under federal or state law. "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455 (2008) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974)); *see also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975) (Title VII does not deprive an individual of other remedies available to redress employment discrimination). With respect to remedies provided under state law, Title VII states:

> Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title.

---

[16] To date, only two federal district courts sitting in Texas have applied *Waffle House*. In the first case, *Muniz v. El Paso Marriott*, 2011 U.S. Dist. LEXIS 18591, 23-24 (W.D. Tex. Feb. 25, 2011), the plaintiff brought her sexual harassment claim under the TCHRA, unlike Jones, who has brought her sexual harassment claim under Title VII. In the second case, *Fredericksen v. Halliburton Co.*, 2011 U.S. Dist. LEXIS 34956, 9-10 (S.D. Tex. Mar. 30, 2011), there is no indication of whether the plaintiff brought her claims of sexual harassment and hostile work environment under Title VII or under the TCHRA. In both cases, the facts underlying the claims of sexual harassment appeared to be identical to facts supporting the common law claims also brought by the plaintiffs. As we detail in our analysis, some of Jones's common law claims are based on facts that are actionable under the TCHRA, while other of her claims are not.

42 U.S.C. § 2000e-7. Based on this language, courts have held that Title VII does not preempt

state law remedies, regardless of whether they are based on statute or common law. *See*

*Bernstein v. Aetna Life & Casualty*, 843 F.2d 359, 364 (9th Cir. 1988) (Title VII does not

preempt state common law remedies).

Indeed, federal courts have exercised jurisdiction over state statutory and common law

claims filed alongside claims brought under Title VII and other federal antidiscrimination

statutes. *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1175 (1st Cir. 1995) (exercising

supplemental jurisdiction over claim brought under state antidiscrimination statute); *Promisel v.*

*First Am. Artificial Flowers, Inc.*, 943 F.2d 251 (2d Cir. 1991) (exercising supplemental

jurisdiction over state antidiscrimination statute alongside ADEA claim); *Jones v. Intermountain*

*Power Project*, 794 F.2d 546, 553 (10th Cir. Utah 1986), *overruled on other grounds by Yellow*

*Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 826 (1990) (exercising pendent jurisdiction over

state common law claims alongside Title VII claim); *Pettis v. Brown Group Retail*, 896 F. Supp.

1163, 1166 (N.D. Fla. 1995) (exercising supplemental jurisdiction over state antidiscrimination

statutory claim alongside ADEA claim); *Gard v. Teletronics Pacing Sys.*, 859 F. Supp. 1349,

1350-1351 (D. Colo. 1994) (exercising supplemental jurisdiction over state tort claims alongside

Title VII and ADEA claims); *Godfrey v. Perkin-Elmer Corp.*, 794 F. Supp. 1179, 1190 (D.N.H.

1992) (exercising supplemental jurisdiction over state tort claims of intentional infliction of

emotional distress and defamation). State law claims are kept in federal court where (1) subject

matter jurisdiction over the state law claims is properly founded upon diversity jurisdiction or

supplemental jurisdiction under 28 U.S.C. § 1367; and (2) the claims could have been brought in

state court. *See, e.g.*, *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d at 1175; *Promisel*, 943 F.2d at

254, 257.  In order to determine whether we must dismiss Jones's state law claims, we first must

examine the basis for our subject matter jurisdiction over these claims and then must analyze whether they may be brought under Texas law.

### 1.   Jurisdiction over Jones's state law claims

Here, we are vested with subject matter jurisdiction because Jones's Title VII claim of sexual harassment and hostile work environment against the KBR Defendants raises a federal question. *See* 28 U.S.C. § 1331. In addition, we possess diversity jurisdiction over Jones's state law claims because Jones, a citizen of California according to her Fourth Amended Complaint, is of diverse citizenship from all Defendants. *See* 28 U.S.C. § 1332(a); *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992) (diversity jurisdiction requires complete diversity of citizenship).

### 2.   Whether Jones claims can be brought under Texas law

Next, we must examine whether Jones's state common law claims can be brought under Texas law. In diversity jurisdiction, a district court must apply the substantive law of the forum in which it sits. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009). Such substantive law includes case law of the Texas Supreme Court such as the *Waffle House* decision. *Id.* The plaintiff in *Waffle House* had brought claims for sexual harassment under the TCHRA and negligent supervision and retention under Texas common law. The Texas Supreme Court held in *Waffle House* that the plaintiff could not recover negligence damages for harassment covered by the TCHRA "when the complained-of negligence is entwined with the complained-of harassment." 313 S.W.3d at 799. Specifically, the court noted that the plaintiff's claims of alleged negligence by her employer (i.e., Waffle House's negligence supervision of the harasser and its continuation of his employment) were "rooted in facts inseparable from those underlying the alleged harassment." 313 S.W.3d at 799.

Here, Jones has brought a number of common law claims against the KBR Defendants, including negligence, negligent undertaking, breach of contract, fraud in the inducement to enter the employment contract, fraud in the inducement to agree to arbitration, false imprisonment, and intentional infliction of emotional distress.[17] With respect to Jones's negligence and negligent undertaking claims, Jones advances several allegedly negligent actions on the part of the KBR Defendants, including the failure to train, supervise, and maintain employees, the failure to provide a safe working environment, and the failure to supervise the project and premises. Almost all of these allegedly negligent acts are intertwined factually with Jones's underlying allegations of sexual harassment during her time at Camp Hope, Iraq, including the alleged sexual assault by Bortz. *See Waffle House*, 313 S.W.3d at 800 (common law negligent supervision and retention claim requires underlying separate, legally compensable tort). The KBR Defendants' failure to undertake particular actions with respect to Jones's harassers or Jones's living situation can be evaluated only by reviewing the facts surrounding Jones's experiences at the hands of her harassers and the KBR Defendants. In addition, Jones's claim that the KBR Defendants acted negligently in failing to maintain sex-segregated living quarters and to devise a proper plan for placement of females in their living environment similarly rests on an examination of the facts of her living situation at Camp Hope, her treatment by male residents, and her requests to be moved to a different living arrangement. All of these facts are intimately tied to the facts underlying her sexual harassment claims. Finally, Jones's claim that the KBR Defendants acted negligently in failing to maintain applicable rules and regulations

---

[17] Jones has also brought a claim of assault and battery against Bortz. The Texas Supreme Court in *Waffle House* clearly stated that Texas law does not bar a tort claim against the harasser/assailant individually. 313 S.W.3d at 799. Neither did the court express any opinion as to whether an employer could be liable, under a theory of vicarious liability or ratification, for the harasser/assailant's assault. *Id.* at 801 n.5. As such, we hold that *Waffle House* does not require us to dismiss either Jones's claim of assault and battery against Bortz or her claims of vicarious liability on the part of the KBR Defendants' for Bortz's assault.

regarding alcohol consumption and sexual harassment turn on the key events in question during

Jones's time in Iraq. As such, we must find that Jones's claims of negligence and negligent

undertaking are precluded by the TCHRA under the doctrine articulated in *Waffle House*.

      With respect to Jones's false imprisonment claim, she alleges that the KBR Defendants

confined her to a trailer under guard and refused permission to telephone her parents. The

gravamen of Jones's false imprisonment claim is identical to her claim of retaliation against the

KBR Defendants. Jones alleges in her Fourth Amended Complaint that the KBR Defendants'

retaliation against her for reporting her rape consisted of forcibly placing her in the container and

without any ability to contact the outside world. *Waffle House* relates to preclusion of torts that

are based on the same conduct as "TCHRA-covered harassment" and does not address whether

torts arising out of the same acts underlying "TCHRA-covered retaliation" would also be barred

by the TCHRA. "When a relevant state's precedents in a diversity case do not fully advise us on

the law, we must make our best determination of what that state's highest court would decide."

*Paul v. Landsafe Flood Determination, Inc.*, 550 F.3d 511, 515 (5th Cir. 2008). In *Waffle House*,

the Texas Supreme Court recognized that "the legislative creation of a statutory remedy is not

presumed to displace common-law remedies. To the contrary, abrogation of common-law claims

is disfavored. However, we will construe the enactment of a statutory cause of action as

abrogating a common-law claim if there exists 'a clear repugnance' between the two causes of

action." *Waffle House, Inc.*, 313 S.W.3d at 802. The existence of common law negligence claims

alongside TCHRA-based claims was found to be incompatible in *Waffle House* due to the

varying limitations period, investigatory and conciliation procedures applicable to TCHRA

claims, the substantive elements of and affirmative defenses available for each type of claim, and

differing remedies. Similarly, in *City of Waco v. Lopez,* 259 S.W.3d 147, 155 (Tex. 2008), the

Texas Supreme Court held, based upon a similar analysis, that the TCHRA provides the exclusive state statutory remedy for public employees alleging retaliation arising from activities protected under the TCHRA. The court barred a plaintiff's claims under the Texas Whistleblower Act based on conduct that would be actionable under the TCHRA's anti-retaliation provision.

Here, to allow Jones to bring a false imprisonment claim based upon the same retaliatory conduct that is actionable under the TCHRA, *see* Tex. Lab. Code § 21.055, would allow Jones to avoid the administrative exhaustion requirement of the TCHRA, TCHRA filing deadlines, and the TCHRA's limits on damages. *See Waffle House*, 313 S.W.3d at 807. In addition, the elements of a cause of action for false imprisonment impose no requirement that the plaintiff show causation between her protected activity and the retaliatory conduct, unlike the TCHRA. *Compare Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985) (to prevail under a false imprisonment claim, plaintiff must prove (1) willful detention, (2) without consent, and (3) without authority of law), *with Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 329 (Tex.App.--Texarkana 2008, pet. denied) (a prima facie case of unlawful retaliation must show: (1) protected activity by the claimant, (2) an adverse action suffered by the claimant, and (3) a causal link between the protected activity and adverse action). For these reasons, we believe that the Texas Supreme Court would hold that the TCHRA precludes a plaintiff from bringing state common law claims that are based on conduct that is actionable under the TCHRA's anti-retaliation provision. We find that Jones's false imprisonment claim is barred by the TCHRA.

With respect to Jones's breach of contract claim, she claims that the KBR Defendants breached certain warranties of protection against sexual harassment, sexual advances, violation of company policies by other employees, and misconduct by other employees contained in her

employment agreement. Again, these alleged breaches can not be evaluated separately from sexual harassment and assault that constitute the acts giving rise to the KBR Defendants' breaches of the employment agreement. *See Sola v. Lafayette College*, 804 F.2d 40, 44 (3d Cir. 1986) (dismissing plaintiff's breach of contract claim where alleged breach consisted of discriminatory conduct that was cognizable only under state antidiscrimination statute). As such, we find that Jones's breach of contract claim is barred by the TCHRA.

    With respect to Jones's claims of fraud in the inducement to enter into an employment agreement and to agree to arbitration, we find that these claims rest on a different factual predicate than Jones's sexual harassment claims. Jones's fraud claims are based upon the KBR Defendants' alleged awareness of repeated sexual attacks, sexual harassment, and mistreatment of women in Iraq by U.S. citizens and KBR employees, their failure to disclose these material facts to Jones, and Jones's reliance on these misrepresentations. As a result of her reliance, Jones entered into her employment agreement and agreed to an arbitration provision. *Waffle House* certainly controls the question of "whether employer liability for *unwanted sexual touching by a coworker* . . . is limited to a tailored TCHRA scheme," 313 S.W.3d at 803 (emphasis added). However, courts have recognized that, where an antidiscrimination statute provides an exclusive remedy for a plaintiff's claims of discriminatory conduct, the plaintiff may still proceed with state law claims that "are raised in order to vindicate personal injuries that extend beyond discrimination in the workplace." *Kent v. Howard*, 801 F. Supp. 329, 332 (S.D. Cal. 1992); *see also White v. General Services Admin.*, 652 F.2d 913, 917 (9th Cir. 1981) ("Title VII does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin."). In cases where the plaintiff's tort claims arose from a different factual predicate than her claims under the antidiscrimination statute, courts have permitted the

34

tort claims to proceed. *See Monfore v. United States*, 1995 U.S. App. LEXIS 3365, *7-*8 (9th Cir. Feb. 16, 1995) (plaintiff's defamation claim not preempted by Title VII because it was based upon separate factual predicate than her allegations of sexual harassment); *Otto v. Heckler*, 781 F.2d 754, 757, *amended*, 802 F.2d 337 (9th Cir. 1986) (citation omitted) ("[T]orts which constitute highly personal violations[s] beyond the meaning of discrimination [are] separately actionable."); *Ramsey v. AT&T Corp.*, 1997 U.S. Dist. LEXIS 13305, *18 (E.D. Pa. Aug. 22, 1997) (fraud, negligent misrepresentation, and defamation claims not preempted by Pennsylvania antidiscrimination statute because claims might be based on actions separate from claim of age discrimination); *Deramo v. Consolidated Rail Corp.*, 607 F. Supp. 100, 102 (E.D. Pa. 1985) (plaintiff's breach of contract claim, based upon his detrimental reliance upon representations made by defendants, not preempted by Pennsylvania antidiscrimination statute because it was factually different from plaintiff's age discrimination claim). Even in *City of Waco v. Lopez*, the Texas Supreme Court declined to rule on whether a statutory remedy could remain available for a plaintiff whose retaliation claims were "based on other laws that define discrimination to include conduct that is not prohibited under the CHRA." 259 S.W.3d at 156.

Here, Jones's fraud claims rest on a different set of alleged facts from her sexual harassment claims. The fraud claims are based upon facts regarding the KBR Defendants' knowledge of the harm suffered by women generally at the hands of its employees and other U.S. citizens and its conduct towards Jones during the negotiation and signing of her employment agreement. In contrast, Jones's sexual harassment claim is based upon events subsequent to Jones's arrival in Iraq, such as behavior of her KBR coworkers and Bortz's alleged sexual assault, and are specific to Jones herself. Though the injury Jones allegedly suffered as a result of the fraud consists of sexual harassment and sexual assault, it is the KBR Defendants'

35

concealment of material facts from Jones, and her resulting reliance, that is the gravamen of her fraud claims. The allegedly fraudulent conduct of the KBR Defendants does not consist of sexual harassment that would also fall within the ambit of the TCHRA. We do not believe that her fraud claims are so factually intertwined with her sexual harassment claims such that the fraud claims fall within the ambit of the TCHRA. Therefore, we find that Jones's claims of fraud in the inducement to enter into an employment agreement and fraud in the inducement to agree to arbitration are not barred by the TCHRA.

Finally, with respect to Jones's intentional infliction of emotional distress claim, she has submitted summary judgment evidence purporting to establish a factual foundation for Jones's IIED claim separate from her claim of retaliation. We need not determine whether Jones's factual allegations supporting her IIED claim are actually separate and independent from the allegations supporting her sexual harassment and retaliation claims because we conclude in Part IV.E. *infra* that her IIED claim fails as a matter of law.

In sum, we must grant summary judgment to the KBR Defendants on Jones's common law claims of negligence, negligent undertaking, breach of contract, false imprisonment, and intentional infliction of emotional distress. We deny summary judgment to the KBR Defendants on Jones's common law claims of fraud in the inducement to enter into an employment agreement and fraud in the inducement to agree to arbitration.

### B.  Plaintiff's Retaliation Claim

The KBR Defendants argue that Jones's claims of retaliation under Title VII should be dismissed because she failed to exhaust her administrative remedies with respect to these claims. Specifically, the KBR Defendants contend that Jones did not include within her EEOC Charge of Discrimination any facts, allegations, or reference to retaliation in the form of: (a) acts by Eric

36

Iler; or (b) the KBR Defendants' alleged placement of Jones in a trailer after she reported being raped by Bortz.

As a precondition for filing suit under Title VII, a private employee must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008). The Fifth Circuit "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (citing *Sanchez v. Standard Brands*, Inc., 431 F.2d 455, 466 (5th Cir. 1970)). A court engages in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789.

## 1.  Retaliation by Eric Iler

Jones alleges that she suffered retaliation from Eric Iler ("Iler"), her supervisor at KBR in Houston, after she asked him to cease forcing her to have a sexual relationship with him. Iler allegedly ridiculed, threatened, and harassed her in retaliation for her request. In addition, he allegedly provided a false report of her performance to her new supervisor. Neither these allegations, nor any facts resembling such allegations, appear in Jones's EEOC Charge. Rather, Jones's EEOC Charge indicates that the unlawful behavior she suffered occurred between July 25, 2005 and July 28, 2005, the dates corresponding to her time in Iraq. The narrative of her EEOC Charge similarly begins with the harassment she received in Iraq and makes no reference to any harassment or retaliatory behavior she suffered prior to her arrival in Iraq. Even under a broad reading of Jones's EEOC Charge, we cannot conclude that it would have triggered an

EEOC investigation of the alleged harassment that occurred prior to Jones's employment in Iraq. Aside from the temporal and geographic separation in the alleged instances of harassment and retaliation, the harassment and retaliation involved different individuals, different types of sexual harassment (quid pro quo v. hostile work environment), and varying forms of retaliation. The retaliation by Iler is simply not "like or related to allegations contained in the charge." *King v. Georgia Power Co.*, 295 F. Supp. 943 (N.D. Ga. 1968). We dismiss Jones's claims of retaliation based on acts by Iler due to her failure to administratively exhaust these claims.

### 2.   Retaliation by KBR Defendants after Jones's Report of Rape

Next, Jones alleges that she suffered retaliation after she reported her rape to the KBR Defendants. Specifically, she states that she was placed in a trailer, refused permission to call her family, and was given an ultimatum that amounted to a threat of termination. At least two panels of the Fifth Circuit have held that a plaintiff failed to administratively exhaust a retaliation claim when the EEO Charge made no reference to retaliation. In *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. Appx. 917 (5th Cir. 2009), a plaintiff's failure to reference retaliation in her EEOC sex discrimination charge left her retaliation claim unexhausted. In *Jefferson v. Christus St. Joseph Hosp.*, 374 Fed. Appx. 485, 490 (5th Cir. 2010), the plaintiffs' various claims of national origin, race, and age discrimination in their EEOC charges did not exhaust retaliation claims that they filed for the first time in their complaint. Finally, in *Randel v. United States Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998), the plaintiff filed a claim for reprisal and disability discrimination, but failed to include reference to a claim of race discrimination. The Fifth Circuit held that the plaintiff had failed to exhaust his administrative remedies with respect to the race discrimination claim. "Randel's racial discrimination claim is separate and distinct from his reprisal claim." *Id.*

Though these cases appear to instruct that a failure to include reference to retaliation on an EEOC Charge *per se* bars a later civil action for retaliation, we are mindful of the need to engage in "a *fact-specific inquiry* into what EEOC investigations [the charge] can reasonably be expected to trigger." *Pacheco*, 448 F.3d at 792. Here, the EEOC Charge did not include a claim of retaliation and did not include reference to the retaliatory conduct in the narrative of the charge. One factual suggestion within the original EEOC Charge that would support a charge of retaliation is Jones's following statement: "Upon my arrival in Iraq I was housed in an all male barracks. This immediately created a hostile working environment. See attached e-mails I sent to the Advisor of Problems and Requesting a Solution." (Doc. No 150 Ex. B.) Jones's reference to emails that requested a solution to the housing situation could be interpreted as the filing of a complaint regarding hostile work environment or discriminatory behavior. *See Bouvier*, 350 Fed. Appx. at 921. However, what could reasonably expected to grow out of an investigation of this complaint is the KBR Defendants' actions taken in response to Jones's emails, not the KBR Defendants' actions taken in response to Jones's report of rape. There is little factual basis in the EEOC Charge to conclude that an EEOC investigation of retaliation could "reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 788.

The KBR Defendants and Jones invite us to review evidence of the actual EEOC investigation that took place after Jones filed her EEOC Charge as support for their contention regarding the scope of Jones's EEOC Charge. Neither party, however, has cited case law to support a district court's review of the *actual* EEOC investigation that took place after the filing of the EEOC Charge in order to determine the scope of the investigation that *might* be reasonably expected to grow out of the *initial* charge. Assuming, *arguendo*, that such an analysis would be

39

appropriate, it is clear that the actual EEOC investigation did not uncover the allegedly

retaliatory conduct. The relevant excerpt from the EEOC investigator's notes is:

> "Peter Arroyo took her to the hospital. Eventually she was allowed to contact her parents.
> Medical report confirmed that she had been vaginally and anally assaulted. Her parents
> contacted the U.S. Embassy in Baghdad. The Embassy sent agents to talk to her."

(Doc. No. 159, Ex. 24.) The EEOC Letter of Determination states that its investigation revealed

that, after Jones reported the alleged sexual assault, the KBR Defendants "provided medical

assistance, placed her in a secure location, and transported her back to the United States." (Doc.

No. 150, Ex. D.) Regardless of whether an EEOC investigation of retaliatory conduct could

reasonably be expected to grow out of Jones's EEOC Charge, the undisputed facts show that no

investigation of Jones's allegations of retaliatory conduct occurred. We reject Jones's argument

that the testimony of an employee relations investigator regarding the scope of an investigation

that would be carried out by the KBR Defendants is relevant to the scope of an *EEOC*

investigation. Based on the facts presented, we cannot excuse Jones's failure to include reference

to her claim of retaliation in the EEOC charge. Even with every inference drawn in Jones's

favor, we must nonetheless grant summary judgment to the KBR Defendants on Jones's claims

of retaliation.

### C.  Plaintiff's Breach of Contract Claim

The KBR Defendants argue that Jones's breach of contract claim must fail as a matter of

law because it is not based upon any breach by the KBR Defendants of their obligations under

Jones's Employment Agreement. Based on our ruling in Part V.A.2, *supra*, granting summary

judgment to the KBR Defendants on Jones's breach of contract claim, we need not address the

KBR Defendants' argument here.

### D.  Plaintiff's Claim of Fraud in the Inducement to Agree to Arbitration

The KBR Defendants argue that Jones's claim of fraud in the inducement to agree to arbitration is moot because the KBR Defendants are no longer seeking to enforce arbitration in this case. Instead, the KBR Defendants have agreed to litigate Jones's entire case in this Court. As such, the arbitration clause is no longer at issue and Jones does not possess a legal cognizable interest in the outcome of this claim. Jones responds that her claim for fraud in the inducement to agree to arbitration is "based upon the delay in justice." She argues that she has been forced to spend significant legal resources to battle the arbitration provision, and that this provision has effectively silenced other victims of sexual assault from publicly providing relevant information.

The Supreme Court has defined mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). A case may be moot either when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 396; *see also Karaha Bodas Co. v. Negara*, 335 F.3d 357, 365 (5th Cir. 2003). In applying these principles to this case, it is clear that Jones's claim is not moot. Jones has alleged that the KBR Defendants knowingly misrepresented certain material facts, that she relied on these misrepresentations, that she agreed to an arbitration provision as a result of these misrepresentations, and that she was injured. Jones's allegations of injury rest not only on the KBR Defendants' attempts to compel her claims to arbitration, but also upon the harm she suffered in Iraq. As such, all of the elements required to maintain a valid cause of action still exist. Jones still possesses a legally cognizable interest in the outcome of her fraud claims, despite the KBR Defendants' decision to waive enforcement the arbitration provision. The KBR Defendants' waiver merely ameliorates one injury—being compelled to arbitrate certain claims—that Jones had suffered as a result of the KBR

Defendants' conduct. The rest of Jones's alleged injuries still lie. We deny summary judgment to the KBR Defendants on Jones's claim of fraud in the inducement to agree to arbitration.

### E.  Plaintiff's Claim for Intentional Infliction of Emotional Distress

The KBR Defendants argue that Jones's IIED claim fails as a matter of law because, under Texas law, an IIED claim is a "gap filler" tort that can lie only when a plaintiff has no other recognized theory of redress. Here, according to the KBR Defendants, Jones's IIED claim duplicates her negligence, negligent undertaking, sexual harassment, retaliation, and false imprisonment claims because all of these claims are based upon the same facts. As such, Jones cannot maintain an IIED claim.

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). Extreme and outrageous conduct is conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999); RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965). It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous. *GTE Southwest, Inc.*, 998 S.W.2d at 616. But when reasonable minds may differ, it is for the jury, subject to the

court's control, to determine whether, in the particular case, the conduct was sufficiently extreme and outrageous to result in liability. *Id.*

The Texas Supreme Court has recognized that a plaintiff may bring an IIED claim in limited circumstances:

> "[T]he intentional infliction of emotional distress [is], first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress. The tort's 'clear purpose,' we noted, was 'to supplement existing forms of recovery by providing a cause of action for egregious conduct' that might otherwise go unremedied. We cautioned, however, that the tort was 'a 'gap-filler' tort that should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines."

*Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (quoting *Standard Fruit*, 985 S.W.2d at 68) (omitting internal citations). Since an IIED claim is a "gap-filler" tort, it cannot be used to evade "legislatively-imposed limitations on statutory claims or to supplant existing common law remedies." *Id.* An IIED claim will be barred where the plaintiff's injuries can be remedied by existing statutory or common law remedies, even if those avenues are barred. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (IIED claim arising out sexual harassment is barred due to availability of TCHRA remedy, even though plaintiff's TCHRA was time barred). In *Hoffman-LaRoche, Inc.*, the court held that the plaintiff could not bring an IIED claim to recover a greater amount of emotional and punitive damages where the sexual harassment complained of was subject to the TCHRA's limitations on such damages. "[W]hen the gravamen of the plaintiff's complaint is for sexual harassment, the plaintiff must proceed solely under a statutory claim unless there are additional facts, unrelated to sexual harassment, to support an independent tort claim for intentional infliction of emotional distress." *Hoffmann-La Roche, Inc.*, 144 S.W.3d at 441.

43

Jones's Fourth Amended Complaint states that her IIED claim is based on the same facts that underlie her other statutory and common law claims. However, in her response to KBR's motion for partial summary judgment on the IIED claim, Jones argues that, in fact, her IIED claim is based on additional facts separate from those underlying her other claims. Specifically, Jones contends that her IIED claim is based upon KBR's efforts to "hide" her rape. The KBR Defendants allegedly confined her to a guarded container, refused to allow her to telephone her parents, demanded that she write down her story prior to contacting the Department of State, interrogating her at the Department of State facility, accompanying Jones back to the United States and unnecessarily documenting her actions and words, issuing Jones an ultimatum regarding her continued employment with KBR, and destroying Jones's rape kit. With respect to some of these actions (confinement to the trailer, refusing to allow Jones to call her parents), these clearly serve as the same basis for Jones's false imprisonment and retaliation claims. With respect to the other acts by the KBR Defendants after Jones reported her rape, these too may appropriately be brought under a retaliation claim. Though Jones's false imprisonment claim is barred by the TCHRA, we recognize that the tort of false imprisonment is an avenue for legal redress for some of the KBR Defendants' acts.[18] *Hoffmann-La Roche, Inc.*, 144 S.W.3d at 447 ("Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."). In addition, Jones has both Title VII and the TCHRA available for her retaliation claim, though she has failed to exhaust her administrative

---

[18] Plaintiff cites *Conley v. Driver*, 175 S.W.3d 882 (Tex. App.—Texakarna 2005, pet. denied), as support for the principle that an intentional infliction of emotional distress claim may be maintained alongside another tort claim that redresses the same conduct. In *Conley*, a teenage girl was sexually molested by her stepfather, who threatened to ruin her life after she reported the molestation. The stepfather sued the girl for defamation, and she counterclaimed for assault and intentional infliction of emotional distress. The jury found for the girl and awarded separate damages for assault and intentional infliction of emotional distress. The Texas Court of Appeals upheld both damages awards. It recognized that IIED is a "gap filler" tort that cannot be used as an alternative to some other, more conventional tort that fits the facts. The court found that the facts supporting the IIED claim were based on the stepfather's actions separate and apart from his assault behavior. *Id.* at 888. Here, the facts that Jones contends are separate from those underlying her retaliation claim are, in fact, an extension of the allegedly retaliatory conduct.

remedies under either statute. Under the precedent of the Texas Supreme Court, we must focus on the availability—not the ultimate success—of statutory or common law remedies for the wrongful acts. *Id.* at 448; *Creditwatch, Inc.*, 157 S.W.3d at 816. Since the tort of false imprisonment, the TCHRA statutory cause of action for retaliation, and the Title VII cause of action for retaliation exist to cover the acts complained of, we must find that Jones's IIED claim fails as a matter of law.[19] We grant summary judgment to the KBR Defendants on Jones's IIED claim.

## V.      CONCLUSION

For the reasons outlined above, the KBR Defendants' Motion for Partial Summary Judgment (Doc. No. 150) is **GRANTED IN PART** and **DENIED IN PART**, and the KBR Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Partial Summary Judgment (Doc. No. 173) is **GRANTED IN PART** and **DENIED IN PART**:

(1) Summary judgment is granted to the KBR Defendants on Jones's negligence claim;

(2) Summary judgment is granted to the KBR Defendants on Jones's negligent undertaking claim;

(3) Summary judgment is granted to the KBR Defendants on Jones's retaliation claim;

(4) Summary judgment is granted to the KBR Defendants on Jones's breach of contract claim;

(5) Summary judgment is denied on Jones's fraud in the inducement to enter the employment contract claim;

---

[19] We also rest our holding regarding Jones's IIED claim upon the availability of Title VII and the common law torts of assault and battery and negligence to redress Jones's allegations of harassment and sexual assault. Jones has not argued either that a claim under Title VII is unavailable to her against the KBR Defendants or that the tort of assault and battery is unavailable as to Bortz.

(6) Summary judgment is denied on Jones's fraud in the inducement to agree to
arbitration claim;

(7) Summary judgment is granted to the KBR Defendants on Jones's intentional
infliction of emotional distress claim; and

(8) Summary judgment is granted to the KBR Defendants on Jones's false imprisonment
claim.

The KBR Defendants' Motion for Leave of Court to File Reply Brief in Excess of 10-
Page Limit (Doc. No. 188) is **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** this the 24th day of May, 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE